BOARD OF LICENSE COMM'RS OF THE TOWN OF PORTSMOUTH
vs. JAMES S. DANEKER, *Acting Liquor Control Adm'r.*

MARCH 21, 1951.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

Condon, J. This is a petition for certiorari to review the decision of the acting liquor control administrator directing the town council of Portsmouth sitting as a board of license commissioners to grant a class B limited liquor license to David E. Lemay and his wife Ida for 719 Park avenue in that town. Upon the filing of the petition we issued certiorari and in compliance therewith the administrator made due return of all the records and papers in the case, including a transcript of testimony, for our inspection.

For convenience we shall hereinafter refer to the Lemays as the applicants, to the acting liquor control administrator as the administrator, and to the town council as the local board. It appears from the return that the local board had previously denied applicants a class B limited license, and upon appeal to the administrator such decision was sustained on October 21, 1949 for a reason not given by the local board, namely, the unsanitary condition of the applicants' premises. In his decision the administrator intimated that a correction of that condition would remove any obstacle to the granting of the license and therefore he dismissed their appeal "without prejudice to the right of the Applicants to reapply."

Acting upon that suggestion the applicants apparently corrected such condition and on November 1, 1949 again applied to the local board for a class B limited license. On the same day the town council in special meeting assembled, apparently as the board of license commissioners as well as for other purposes, although the record does not so state, took the following action on liquor licenses in the town: "Voted that the number of Liquor Licenses to be granted in this Town shall not exceed the number now in force; namely 2 Class A; 9 Class B; 2 Class D, Full Privilege and 1 Class D Ltd." It was also voted that the pending applications be duly advertised. Such applications, among which was that of the applicants for a class B limited license, were accordingly advertised for hearing

and consideration on November 25, 1949. On that day several objectors to the granting of such license appeared and among other reasons stated there were too many licensed places in the area and that the *town council* had voted not to increase the number of licensed places in the town. Apparently for those reasons the application was denied. At the hearing in this court counsel for the local board based his argument in support of quashing the administrator's decision almost wholly on the vote which limited the number of licenses in the town.

The difference of opinion between the local board and the administrator is based solely on the proper construction of that provision of the liquor control statute which gives the administrator "the right and power to limit the number of licenses of each class; provided, however, that such limit shall not exceed the maximum number, if any, of any class of license that is fixed by the licensing boards within their respective towns or cities * * *." G. L. 1938, chap. 164, §10, as amended. Counsel for the local board contended that the vote above quoted fixed the maximum number of licenses in Portsmouth pursuant to that statute. In thus arguing he treats the language of the statute as allowing the local board to fix the maximum number of licenses generally within the town. But such language is that the limit shall not exceed the "maximum number, if any, *of any class of license.*"

We have emphasized in the above quotation the words which we think are significant and which it seems counsel for the local board entirely overlook. If those words can be ignored then a local board could exclude from its town any class of license which it disapproved. In other words, under the guise of fixing a maximum number of licenses generally within the town it would effectually prohibit those classes it deemed undesirable. The administrator contends it was never intended that the local board should have the power to decide for what classes of licenses it would consider applications.

Thus the basic question raised here for our determination is whether a local board, ostensibly acting under chap. 164, §10, as amended, has the power to declare in effect that a particular class of license authorized by G. L. 1938, chap. 163, §3, as amended, shall not be issued in their town. The local board here contends, as we have seen, that they have such power and that their resolution of November 1, 1949 limiting the number of licenses to be granted in the town of Portsmouth to classes A, B, D, and D limited, already issued was a valid exercise of that power which necessarily excluded any consideration of the application here for a class B limited license.

Under G. L. 1938, chap. 164, §10, as amended, the administrator is vested with the power to limit the number of licenses of *each class,* provided, however, that the number thus limited shall not exceed the maximum fixed by the local board, if a maximum has been so fixed. In the case at bar the local board did not expressly fix a maximum number of *each class* but they claim that such is the effect of their resolution of November 1, 1949. They argue that by enumerating therein the number and classes of licenses then in force and by declaring that the number of liquor licenses to be granted shall not exceed the total of such licenses they have indirectly fixed the number of class B limited licenses at "None (0)." In other words, if that argument is sound they can prohibit consideration of applications for a particular class of license, or by amending their resolution of November. 1, 1949 can even prohibit the granting of any class of license notwithstanding that the statute authorizes licenses in every city and town except where the electors have voted to the contrary.

In our opinion that is a strained construction of §10. The power of the local board to fix the maximum number of licenses of *any class* that may be granted presupposes the *possibility* of a license of *each* class being granted. The board may very well fix the maximum of a class or of some classes at one, but it may not prohibit altogether

the possibility of obtaining a license in any class. We think this construction of §10 is more consistent with the language of that section and with the general scope and underlying intent of the liquor control law than the local board's construction.

In the first place that law prescribes how liquor may be sold throughout the state and nowhere therein either expressly or by necessary implication does it authorize local boards to make exceptions thereto. In the second place it quite clearly contemplates that such boards shall have only the power to decide whether a particular applicant may obtain a license to sell liquor within their jurisdiction and not whether there shall be licenses of certain classes and not of other classes. By enacting chap. 163, §3, the legislature has exercised the power of prescribing the various classes of licenses for which applications may be made. In that section as amended it has prescribed in detail the classes of licenses under which sales of liquor may be legally made in any city or town in the state where the *electors* of that town or city have not prohibited the sale of liquor therein.

The liquor control law expressly leaves it to such electorate whether liquor shall be sold. But the legislature in that same statute has declared in what manner and under what types of license it may be sold except only as to class C licenses. That class and only that class may be banned *by vote of the electors* in any city or town. Thus it is provided by chap. 171, §1, that the electorate of each city or town may under specified conditions decide by their votes whether "licenses for the sale of beverages as defined in Chapter 163 of Title XX" shall be issued in their city or town and if such licenses are authorized whether class C licenses shall be excluded. By chapter 163 the legislature has in all other respects exercised directly its regulatory power over sales of liquor under various classes of licenses. It has delegated none of that power to town councils as such or acting as local boards except as to passing upon

applications for licenses and fixing the maximum number *of each class*.

The electors of Portsmouth have in effect said that licenses for the sale of beverages as defined in chapter 163 shall be issued in their town. They and not the town council were given the sole authority to make that decision. Neither in its legislative capacity as the town council nor sitting as a local licensing board did the council have the power to modify in any way the decision of the electorate. The option to permit the sale of liquor in a town or city or to prohibit it rests, as hereinbefore stated, in the electorate. Under that option they may prohibit the sale of liquor altogether or they may allow such sale. When they make the latter decision they cannot choose which classes of licenses may be issued, except only as to class C, but must accept the liquor control law as the legislature has enacted it. Under the second question in §1 of chap. 171, their option to prohibit the issuance of any class of license is expressly limited to class C licenses. *A fortiori* the local board who are merely the representatives of the local electorate cannot lawfully prescribe the class or classes of licenses which may or may not be issued. It, too, must accept the law pertaining to classes of licenses that the legislature has prescribed.

The electorate of Portsmouth having authorized such licenses to be issued in their town, and a class B limited license being included therein, the applicants here had the right to apply for such a license, notwithstanding the town council's resolution of November 1, 1949, and to have the local board consider their application on its merits. Whether the board should grant or deny it was of course for them to decide in the first instance subject to the applicants' right of appeal to the administrator. Since, however, it appears from the record that the board's only reason for denying the application was their assumption that they had no power to grant it, we find that the administrator did not err in ordering them to grant the license on the ground that they had such power.

If this construction may seem to the local boards to be an invasion of the principle of local self-government the answer is that since the repeal of national prohibition our legislature has expressly provided for *state control* in general of the liquor traffic rather than local control. In the exercise of its legislative power it has adopted a policy and provided a system for administering such control in a manner which it deems most likely to be productive of the public good. This court is not concerned with the wisdom or efficiency of such policy or system. Our sole duty is to construe the statute so as to give effect to the legislative will where it is constitutionally expressed. The only way to change the present system of liquor control, if such is deemed either necessary or desirable as a matter of local self-government, is by recourse to the legislature and not to this court.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the papers certified to this court are ordered returned to the respondent with our decision endorsed thereon.

*Burdick, Corcoran & Peckham, Patrick O'N. Hayes,* for petitioner.

*Benjamin Winicour,* for respondent.