347 A.2d 414.
HANNAH PRIMIANO *vs.* TOWN COUNCIL OF THE TOWN OF WARREN.

NOVEMBER 24, 1975.
PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. We have issued our common law writ of certiorari to review the revocation by the respondent council of a victualer's license that had been issued to the petitioner.

The record certified to us indicates that petitioner and her husband are the longtime owners of a waterfront parcel of real estate which abuts the Warren town beach. This parcel bears a 491 Water Street address. The Primiano home is situated on the northerly half of the real estate. In July 1954, the Primianos applied to the Warren Zoning

Board for permission to move a garage that was near their home to the southwest corner of the parcel and convert the garage into a canteen which would serve the refreshment and nutrient needs of the beach's patrons. The canteen would be directly adjacent to the beach and at least 150 feet west of the Water Street roadway. The zoning board gave its approval to the proposed project. The garage was moved to the southwest corner and converted. It measures 20 feet 5 inches wide and 12 feet deep. Beginning with the summer of 1954, petitioner's canteen and the town beach have operated in conjunction with each other. When the beach opened up for business in June, so did the canteen. When the beach closed on Labor Day, the canteen ceased operations. This was the pattern for some 19 years up until 1973.

Early on Sunday morning, on May 20, 1973 the canteen was hoisted into the air by a forklift truck and moved 150 feet easterly closer to Water Street. The operation was conducted by petitioner's husband without benefit of any authorization by the town's building inspector. The Warren Building Code (sec. 56) provides that no building shall be moved without the inspector's written permission. The unauthorized move was brought to the council's attention, and Warren's governmental machinery swung into action. The council met on June 12 and decided to hold a public hearing on June 21, 1973 as to why petitioner's victualing license should not be revoked.

The sole witness at the hearing was the building inspector. He was interrogated by the town solicitor, counsel for petitioner, the council, and some interested citizens. At the conclusion of the hearing the council took a "five minute" recess. When the meeting resumed, a motion was made to revoke petitioner's license. It passed unanimously and there has not been a hot dog or hamburger sold or a soda served from Primiano's Beach Stand since that day.

a condition which one of the seconders of the revocation motion observed would have an impact on the town's citizens as well as the people attending the beach. This legislator admitted that it was a "tough thing" to second a motion calling for the "lifting of the license" but he believed it to be "an accurate decision." The legislator's concern about future beachgoers' thirst and hunger pangs is commendable, however, his concept as to the "accuracy" of the revocation order leaves something to be desired.

The issue to be resolved in this controversy is relatively simple: Can the town council revoke the wife's license to sell food and drink because the location of the building in which she plans to carry out her services may violate the provisions of either the building or zoning ordinances or both? Based on the record before us, the answer is "no."

Victualing licenses are issued pursuant to the provisions of G. L. 1956, chapter 24 of title 5. Section 5-24-2 provides that a victualing license shall remain in force for the period of 1 year following the first of December, unless it is sooner revoked *for cause*. Previously, in *Santos* v. *City Council*, 99 R. I. 439, 208 A.2d 387 (1965), this court, in construing the provisions of §5-24-2, ruled that the Legislature intended to bestow upon the municipal legislative bodies broad power to regulate places catering to the needs of the public for food and drink so that the public health and welfare would not be endangered. The entire rationale for the revocation of a victualing license is the existence of a condition on the licensed premises that would imperil the public health.

The acting council president who presided at the hearing made it perfectly clear that the sole purpose of that evening's meeting was to see whether Mr. Primiano's failure to comply with sec. 56 of the town's building code was cause to revoke his wife's license. The councilman

who moved passage of the revocation motion specifically based his action on the husband's failure to obtain the requisite permission. Four months later on October 30, the council amended the minutes of its June 21 meeting to show that the license was "lifted" because Mr. Primiano violated both the building code and the zoning ordinance.

It is obvious that there was no threat to the public health because the canteen had been moved to its new location. The structure was not open for business. In fact, it was made clear that on June 4, 1973 the state Department of Health's Division of Food Protection & Sanitation had given a conditional approval to the canteen's operation at the new location. This is the agency that the General Assembly has said has the responsibility of insuring that public eating places will not be a danger to their customers' well-being. Final approval was conditioned upon the installation of several sinks and the screening of the windows at the take-out counter where, those who do not wish to enter the canteen, can be seen and served.

We would stress that the state's law calling for the licensing of restaurants has a different purpose than the Warren ordinances. The licensing law regulates the activity taking place on the land. The building and zoning regulations govern the use of the land. We have alluded to this difference on several occasions. *Town of Little Compton* v. *Round Meadows, Inc.*, 108 R. I. 478, 480-81, 276 A.2d 471, 473 (1971); *Hester* v. *Timothy*, 108 R. I. 376, 386, 275 A.2d 637, 642 (1971); *Standish-Johnson Co.* v. *Zoning Board of Review*, 103 R. I. 487, 493-94, 238 A.2d 754, 758 (1968). Here, the difficulties that have been encountered by Warren's officialdom do not arise from any health threat to the populace which is attributable to petitioner's conduct of her business, but the controversy to which we are witness is the result of her husband's dis-

regard of the regulations that restrict one's use of his real estate. In such a situation Mr. Primiano's ignoring of the town's building and zoning regulations is no ground to "lift" his wife's license. Having made this observation, we hasten to point out that the town is not without a remedy. If there has been a violation of the zoning ordinance, the town solicitor is specifically authorized by G. L. 1956 (1970 Reenactment) §§45-24-6 and 45-24-7 to go to the Superior Court and seek injunctive relief which will either compel compliance or restrain the violation. *Mauran* v. *Zoning Board of Review*, 104 R. I. 604, 247 A.2d 853 (1968); *Town of Lincoln* v. *Cournoyer*, 95 R. I. 280, 186 A.2d 728 (1962). If the town building code has been breached, the town may seek injunctive relief by invoking the provisions of G. L. 1956 (1968 Reenactment) §23-27-4. However, it may not restore law and order by revoking the petitioner's license.

The petition for certiorari is granted, the decision of the town council is quashed, and the record certified to us is returned to the council with our decision endorsed thereon.

*John F. Cuzzone, Jr., Matthew F. Callaghan, Jr.,* for petitioner.

*Pasquale T. Annarummo,* Town Solicitor, for respondent.