**EL NIDO, INC.**

**v.**

**Richard GOLDSTEIN, in his capacity as City Clerk of the City of Pawtucket et al.**

**No. 92–518–M.P.**

Supreme Court of Rhode Island.

June 24, 1993.

Marty C. Marran, Pawtucket, for plaintiff.

Christopher Fay, City of Pawtucket, for defendant.

## OPINION

MURRAY, Justice.

This case came before us on a petition for certiorari challenging the rescission of a victualing-house license by the Pawtucket City Council (city council), the members of which are the respondents here. The petitioner, El Nido, Inc. (El Nido), contends that it was denied due process of law in that it received no notice of the rescission and was not afforded an opportunity to be heard on the matter. Additionally El Nido argues that the city council lacked both personal jurisdiction and subject-matter jurisdiction to reexamine its prior approval of El Nido's victualing-house license.

El Nido is a Rhode Island corporation, incorporated on March 23, 1992, for the purposes of operating a restaurant and lounge at 210 Dexter Street in Pawtucket, Rhode Island. On March 20, 1992, Paul Rheume (Rheume), in his capacity as president of El Nido, applied to the Pawtucket city clerk's office for a transfer of a class-B retailbeverage license from Arcadia Enterprises, Inc. (Arcadia), of the same address on Dexter Street. This class-B license would permit the sale of both intoxicating and nonintoxicating beverages to be consumed on the premises. General Laws 1956 (1987 Reenactment) § 3-7-7. On that same day Rheume applied to the city clerk, also a respondent in this case, for a first-class victualing-house license pursuant to G.L.1956 (1987 Reenactment) § 5-24-1, which would allow petitioner to prepare and sell food to be consumed on the premises. In his petition to the city clerk, however, Rheume noted that this victualing-house license was also a transfer from Arcadia.

On numerous occasions between April and June, the city council assembled and reviewed El Nido's license applications. The city council, however, was serving in a dual capacity, namely, as the board of license commissioners and as the city council. Pursuant to G.L.1956 (1987 Reenactment) § 3-5-15, local councils or licensing boards are authorized to issue liquor licenses, including class-B retailer's licenses. That statute reads in pertinent part:

"The right, power and jurisdiction to issue all other licenses authorized by this title * * * shall be in the town councils or license boards of the several towns, and in the mayors and city councils in the several cities * * *. In the several cases where * * * the mayor and council of a city is hereby authorized to issue licenses, they are for that purpose hereby constituted license commissioners." Section 3-5-15.

With respect to the issuance of a license for a victualing house, that power rests with the city council rather than with a board of license commissioners. Section 5-24-1 reads in pertinent part:

"(a) The town council of every town and the city council of every city shall have the power to regulate, including the setting of hours of operation, the keeping of taverns, victualing houses, cookshops, oyster houses and oyster cellars therein, by granting licenses therefor * * * or by refusing to grant them."

On June 24, 1992, the city council, sitting as the board of license commissioners, denied El Nido's petition for a transfer of the class-B retail-beverage license because the establishment is located within two hundred feet of a place of worship, in violation of § 3-7-19, as amended by P.L.1990, ch. 269, § 1. On that same date the city council, in its capacity as the city council, denied petitioner's application for a first-class victualing-house license without explanation.

The petitioner appealed the board of license commissioner's denial of the transfer of the class-B liquor license to the Liquor Control Administration pursuant to § 3-7-21, as amended by P.L.1992, ch. 183, § 1. In a decision entered on July 22, 1992, the liquor-control administrator remanded the matter to the Pawtucket board of license commissioners for further review, specifically requesting consideration of whether the recent establishment of a church within two hundred feet of an existing enterprise that is licensed to sell liquor constitutes a sufficient basis to revoke and/or to deny

the transfer of that liquor license. Thereafter the members of the city council again addressed El Nido's applications for the liquor-license transfer and for a victualing-house license in their capacities as the board of license commissioners and the city council respectively.

On August 19, 1992, the city council, acting as the board of license commissioners, denied the transfer of the class-B liquor license to El Nido, again because of its proximity to a recently organized church. However, the city council also reconsidered El Nido's application for a victualing-house license. On September 9, 1992, El Nido's petition was granted on the conditions that handicapped bathrooms be installed in the building and that all fire-code violations be rectified.

El Nido appealed the August 19, 1992 denial of the liquor-license transfer, which was affirmed by the liquor-control administrator after a de novo hearing held on September 29, 1992.[1] At this time Rheume was apprehended by a Pawtucket police officer on an outstanding warrant for his arrest.[2] Subsequent to the liquor-control administrator's denial of the liquor-license transfer but before the victualing-house license was actually issued by the city council, there arose a concern on the part of one member of the city council that it may have mistakenly granted El Nido its victualing-house license. Specifically a question was submitted to the city solicitor for his opinion about whether the city council erred "in splitting up the BV license, granting the Victualling–House, while rejecting the liquor license."

In response to the request for a legal opinion on the validity of El Nido's victualing-house license, the city solicitor concluded that the city council erred in approving "the transfer of the victualing house license." In support thereof, the city solicitor maintained that, by definition, a class-B liquor license requires two conditions be present at all times, namely, that the establishment serve both liquor and food. *See* G.L.1956 (1987 Reenactment) § 3–1–1 and § 3–7–7. Consequently the city solicitor found that the class-B license "cannot be bifurcated into beverage and food for approval of one or the other."

On October 7, 1992, upon taking this legal opinion under advisement, the city council rescinded the victualing-house license that had been granted to El Nido on September 9. In a letter dated October 9, 1992, the city clerk informed the president of El Nido of the rescission and suggested that it would be necessary to reapply with the city clerk for a new license if one was desired. The text of the letter further disclosed:

"The problem arose due to the nature of [El Nido's] request for a Victualling House license. This request was part of a transfer of a BV license from Arcadia Enterprises. These two licenses must co-exist because [one] cannot have the B license without the V license; therefore, the correct procedure would have been * * * to apply for a new Victualer House license as opposed to transferring the license from Arcadia Enterprises."

On October 20, 1992, El Nido petitioned this court for a writ of certiorari and a writ of mandamus,[3] arguing inter alia

---

1. The petitioner's appeal from the liquor-control administrator's denial of the liquor-license transfer is presently pending in Providence County Superior Court pursuant to G.L.1956 (1988 Reenactment) § 42–35–15, and therefore, we need not address the propriety of the denial of the liquor license.

2. The respondents assert that Rheume fraudulently applied for the transfer of Arcadia's liquor license by not disclosing his adult criminal convictions, which convictions led to the warrant for his arrest. They further argue that this fraudulent act justifies the city council's rescission of the victualing-house license. Since G.L.

1956 (1987 Reenactment) § 5–24–1 does not restrict persons with criminal records from obtaining victualing-house licenses, we find respondents' argument to be without merit.

3. Although El Nido petitioned this court for a writ of mandamus, seeking to order the city clerk to issue it an application for a renewal of its victualing-house license, and respondents replied thereto, we must note that this court did not issue the alternative writ. Consequently the matter of mandamus was neither argued nor briefed by the parties.

that it was denied due process by the rescission of its victualing-house license, that the city council no longer had jurisdiction over the matter, that the city clerk unlawfully refused to perform the purely ministerial act of issuing El Nido an application for the renewal of its victualing-house license, and that it would suffer a great financial hardship in renovating the building and paying rent while the status of its victualing-house license remains undecided. On November 19, 1992, we granted certiorari and stayed the city council's decision to rescind the victualing-house license.

■ We believe that the city solicitor and consequently the city council misinterpreted the status of El Nido's victualing-house-license application. It is apparent from the legal correspondence between the city solicitor and the city council that the reason for questioning the validity of the victualing-house license was its application as a "transfer from Arcadia," as submitted to the city clerk in conjunction with the transfer of the liquor license from Arcadia. We note, however, that our General Laws do not mandate the transfer of a victualing-house license but merely require an application for such license. Section 5–24–1; cf. § 3–5–19 (permitting the transfer of a liquor license when the maximum limit of liquor licenses in a city or town, as set pursuant to § 3–5–16, has been reached). Regardless of any technical defect in the form of the victualing-house-license application, it should have been treated as an application for a new victualing-house license, separate and apart from the application for a liquor-license transfer. Therefore, it was erroneous for the city council, as well as the city solicitor, to consider this application as part and parcel of El Nido's application for a transfer of Arcadia's liquor license.

■ Furthermore we do not agree with the city council or the city solicitor that the victualing-house license was erroneously granted to El Nido on September 9. A class-B retailer's license affords the licensee the privilege of selling alcoholic beverages for consumption on the premises of a "duly licensed" tavern or victualing house. Section 3–7–7. It is a prerequisite that a businessperson obtain from the city council a license to operate a tavern or victualing house pursuant to § 5–24–1 prior to being issued a class-B retailer's license. Although we are cognizant of the fact that it is common practice for a businessperson to apply for each license simultaneously when he or she seeks to operate a restaurant and/or a lounge, as exemplified by the city clerk's misleading reference to a "BV license" rather than a class-B license, we find that a class-B retailer's license and a victualing-house license confer two distinct privileges on a single licensee. It stands, then, that a victualing house may exist without a liquor license, but a drinking establishment that holds a class-B retailer's license cannot operate without a victualing-house license. Because these two licenses are distinct, the city council may grant a victualing-house license, thereby allowing food to be prepared and consumed on the premises, while the same city council members, sitting as the board of license commissioners, may simultaneously deny the transfer or issuance of a class-B retailer's license, thereby prohibiting alcoholic beverages from being served.

We therefore find that the city council erred in rescinding El Nido's victualing-house license without affording the petitioner notice or an opportunity to be heard. The rescission here had the same effect on the petitioner's business as a revocation of its victualing-house license, which is governed by § 5–24–2. Pursuant to that statute, every victualing-house license "shall continue and be in force until the first of December, unless sooner revoked for cause." In accordance with our opinion in *Santos v. City Council of East Providence*, 99 R.I. 439, 208 A.2d 387 (1965), the city council in this case may review the victualing-house license granted to El Nido on September 9 to establish whether there is cause to revoke its license, namely, whether there has been "any failure to comply with such ordinary standards of cleanliness and sanitation as are reasonably necessary to protect the public interest in its health and welfare." *Id.* at 443–44, 208

A.2d at 389. Until such time as El Nido's victualing-house license is not renewed or is revoked for cause pursuant to § 5–24–2, its license to prepare and serve food for consumption on the premises remains in effect.

For the foregoing reasons we grant the petition for certiorari. The decision of the Pawtucket City Council is quashed, and the papers of the case are remanded to the office of the Pawtucket city clerk with our decision endorsed thereon.

LEDERBERG, J., did not participate.