**AMICO'S INCORPORATED, d/b/a Pal's Family Restaurant et al.**

v.

**Thomas MATTOS et al.**

**No. 2001–118–Appeal.**

Supreme Court of Rhode Island.

Feb. 15, 2002.

Brian A. Goldman, Providence, for Plaintiffs.

Edmund L. Alves, Jr., Jeffrey B. Pine, Providence, for Defendants.

Present WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

Does the Town of East Greenwich have the authority to regulate smoking in bars and restaurants located within its borders? We hold that it does. In 1999 the Rhode Island Department of Health issued a health alert, reporting that "the vast majority of restaurants in Rhode Island still allow smoking and in so doing represent one of the last public exposures to [secondhand smoke] for children." The alert "strongly recommended" that parents not take children into restaurants that allow smoking, and it proceeded to identify numerous risks of secondhand smoke to children—including bronchitis, pneumonia, middle ear and lung abnormalities, and new and worsening asthma—and to the general population, including "lung cancer and other significant health threats." The next year, a dispute between local restaurants and the town flared after an ordinance was enacted that restricted or banned smoking in restaurants and bars. Several restaurants and a hospitality and tourism trade association sought a declaratory judgment that the ordinance was void and sought injunctive relief from its enforcement. The Superior Court granted a summary judgment for the defendants, and the plaintiffs appealed. For the following reasons, we deny and dismiss the plaintiffs' appeal and affirm the judgment of the Superior Court.

### Facts and Procedural History

On April 25, 2000, in response to the health alert from the department of health,

the East Greenwich Town Council (council) adopted Ordinance No. 686 (ordinance), which required licensed restaurants and bars either to ban smoking entirely or to provide a separate, enclosed smoking area. The plaintiffs, a group of twelve licensed eating and drinking establishments in the Town of East Greenwich (town) and the Rhode Island Hospitality and Tourism Association, filed a complaint for declaratory judgment and injunctive relief in Superior Court, seeking to prevent enforcement of the ordinance. The plaintiffs averred, *inter alia*, that the cost of complying with the segregated smoking area requirements of the ordinance are so onerous that, in effect, they result in a smoking ban.[1] The plaintiffs also claimed that the town lacked authority to enact Ordinance No. 686 and that the ordinance not only conflicted with state law, but was preempted by it. Accordingly, they sought relief from its enforcement.

The defendants, Thomas Mattos, who was finance director of the town, members of both the council and the board of licenses, and the town manager, argued that the home rule charter as well as the town's clear authority to regulate victualing establishments under G.L.1956 § 5–24–1, and liquor establishments under G.L.1956 § 3–1–5, G.L.1956 §§ 3–5–15 and 3–5–21, conferred upon the town the authority to enact the ordinance.

The American Cancer Society, the American Heart Association, and the American Lung Association of Rhode Island participated in the trial court proceedings as *amici curiae* and submitted a brief to this Court. Pending trial, plaintiffs moved for a temporary restraining order and/or a preliminary injunction and for a summary judgment. The Superior Court granted the temporary restraining order and scheduled a hearing on the motion for summary judgment. The defendants cross-moved for summary judgment, and the *amici* filed a memorandum supporting their position.

On March 9, 2001, the trial justice granted defendants' motion for summary judgment, denied plaintiffs' motion, and terminated the temporary restraining order as of March 19, 2001, finding that:

"the Town of East Greenwich has implied power to impose conditions upon liquor and victualing licenses which includes the power to enact an ordinance regulating smoking in restaurants and bars. Ordinance 686 imposes conditions which are both reasonable and lawful. The ordinance does not violate the Constitution of the State of Rhode Island and reflects a valid exercise of municipal power over local concerns. The Legislature has delegated authority to municipalities to regulate smoking in licensed facilities and has not preempted the field."

In addition, the trial justice denied plaintiffs' motion to stay the judgment or

---

**1.** The ordinance requires that the "[s]moking area" be:

"a separate enclosed area for eating where smoking is permitted. The smoke-free area and smoking areas shall be separated by solid walls, floors, ceilings, and doors equipped with automatic closing mechanisms.

"The smoking area shall be at negative pressure with respect to adjacent or connected smoke-free areas to prohibit the flow of air from areas where smoking is allowed into smoke-free areas. The smoking area shall have air immediately exhausted to the outside of the building by an exhaust fan rather than recirculated. All area spaces must be identified as either smoke free or smoking permitted areas. Smoke free areas and smoking permitted areas shall comply with all applicable electrical, building, mechanical and fire code requirements." Ordinance No. 686, Town of East Greenwich Code of Ordinances, Sec. 10–301.

for an injunction pending appeal, whereupon plaintiffs appealed and moved for a stay of the judgment in this Court. On March 19, 2001, we granted the stay and granted defendants' request for an expedited appeal.

### Standard of Review

■ We review a trial justice's rulings on cross-motions for summary judgment *de novo*, applying the same standards as those used by the trial justice, and viewing all the facts and the inferences therefrom in the light most favorable to the nonmoving party. *Pontbriand v. Sundlun*, 699 A.2d 856, 859 (R.I.1997). After undertaking such a review, if we determine that no genuine issue of material fact remains in dispute, summary judgment is appropriate as a matter of law. *Id.*

### Authority Under Home Rule Charter

Traditionally, municipalities had no inherent right to self-government. *Lynch v. King*, 120 R.I. 868, 876, 391 A.2d 117, 122 (1978) (citing *City of Providence v. Moulton*, 52 R.I. 236, 246, 160 A. 75, 79 (1932)). The 1951 enactment of the home rule amendment, now designated article 13 of the Rhode Island Constitution, "altered this traditional view by empowering cities and towns to legislate with regard to all local matters." *Id.* Specifically, article 13, section 1, of the Rhode Island Constitution provides, "It is the intention of this article to grant and confirm to the people of every city and town in this state the right of self government in all local matters," and section 2 states, "Every city and town shall have the power at any time to adopt a charter, amend its charter, enact and amend local laws relating to its property, affairs and government not inconsistent with this Constitution and laws enacted by the general assembly in conformity with the powers reserved to the general assembly."

■ But the legislative power conferred by article 13 is not unfettered. The Legislature continues to retain "the power to act in relation to the property, affairs and government of any city or town by general laws which shall apply alike to all cities and towns, but which shall not affect the form of government of any city or town." R.I. Const. art. 13, sec. 4. Thus, municipalities may not legislate on matters of statewide concern, and the power of home rule is subordinate to the General Assembly's unconditional power to legislate in the same areas. *Town of East Greenwich v. O'Neil*, 617 A.2d 104, 111 (R.I.1992); *Westerly Residents for Thoughtful Development, Inc. v. Brancato*, 565 A.2d 1262, 1264 (R.I.1989); *Marro v. General Treasurer of Cranston*, 108 R.I. 192, 195, 273 A.2d 660, 662 (1971). And, as has long been the case, the Legislature continues to exclusively occupy the fields of education, elections, and taxation, thereby precluding any municipality's foray into these areas, absent specific legislative approval. *Malinou v. Board of Elections*, 108 R.I. 20, 26, 271 A.2d 798, 801 (1970); *Royal v. Barry*, 91 R.I. 24, 31, 160 A.2d 572, 575 (1960); *Opinion to the House of Representatives*, 79 R.I. 277, 280, 87 A.2d 693, 696 (1952); *see also* R.I. Const. art. 13, sec. 5.

Article III, section 3170 of East Greenwich's home rule charter provides:

"All legislative powers of the Town shall be vested in the Town Council except those delegated within this Charter. The Town Council may enact, repeal or amend ordinances relating to the Town's property, affairs and government subject to the provisions of the State Constitution and laws enacted by the General Assembly * * *. The Town Council may exercise all additional powers and authority that are consistent

with this Charter, and have been granted to it by this Charter, the Constitution or laws of the State or by the Financial Town meeting. Without limiting the generality of the foregoing[,] the Town Council has and exercises the following specific powers:

> A. To enact, amend or repeal ordinances for the preservation of the public peace, the health, safety, comfort and welfare of the inhabitants of the Town and for the protection of persons and property."

The defendants took the position that the charter's specific provision authorizing the enactment of ordinances for the "health, safety, comfort and welfare" of the town's citizens vested the council with authority to enact Ordinance No. 686. After describing the dangers of smoking and of exposure to secondhand smoke, the ordinance directs that:

> "East Greenwich licensed restaurants must operate in one of the following two options:
>
> "(1) the entire restaurant completely smoke-free; or
>
> "(2) provide a separate, enclosed smoking area. No one under 18 years of age may be served in a smoking area of the restaurant.
>
> "Bars shall be exempt providing no customer under the age of 21 years is permitted on the premises." *Town of East Greenwich Code of Ordinances*, Sec. 10–302.

The trial justice found that the town's inherent power under its home rule charter permitted the regulation of smoking in public restaurants. She also determined, however, that because the ordinance in effect imposed a condition on the issuance of licenses, the town's authority to regulate smoking must flow from a specific legislative delegation of power.

■ Notwithstanding defendants' claim that the regulation of smoking falls within the realm of "health, safety, comfort and welfare," we have repeatedly and unequivocally held that licensing is not a local matter, and therefore, the General Assembly retains exclusive power over the licensing of Rhode Island businesses. *Newport Amusement Co. v. Maher*, 92 R.I. 51, 56, 166 A.2d 216, 218 (1960); *accord Nugent v. City of East Providence*, 103 R.I. 518, 522, 526–27, 238 A.2d 758, 761, 762–63 (1968); *State v. Krzak*, 97 R.I. 156, 160, 196 A.2d 417, 419–20 (1964). It is only after licensing authority has been delegated by the Legislature either "expressly or by necessary implication" that local governing bodies can act. *Maher*, 92 R.I. at 56, 166 A.2d at 218; *see also Nugent*, 103 R.I. at 526, 238 A.2d at 763. Given that licensing constitutes the sole enforcement mechanism of Ordinance No. 686, it is our opinion that the authority to carry out that enforcement must flow from a delegation of power to do so from the General Assembly. Therefore, irrespective of whether the regulation of smoking in local establishments is a matter of local concern, we agree with the trial justice that "[s]ince the power to regulate businesses through licensing is an attribute of the state, the town cannot restrict smoking in licensed facilities unless the Legislature has delegated such authority to the municipality under [t]itle 3 and under chapter 24 of [t]itle 5."

### Authority Under G.L.1956 § 5–24–1 and § 5–24–2

The town argued that its authority to enact the ordinance was specifically delegated by the Legislature pursuant to § 5–24–1(a), which empowers the town council:

> "to regulate, including the setting of hours of operation, the keeping of taverns, victualing houses * * * in the town or city, by granting licenses for those

activities, upon any compensation for the benefit of the town or city that they see fit to impose, or by refusing to grant the licenses."[2]

Section 5–24–2 states, "Every license issued pursuant to [ ] § 5–24–1 * * * shall continue and be in force until the first of December, unless revoked sooner for cause."

The town also argued that it possessed authority to enforce the smoking restrictions in licensed restaurants as a condition of licensure, and the trial justice agreed, stating:

"This Court finds that the Legislature conferred broad powers to the cities and towns to ensure the health, safety and welfare of restaurant patrons. That power naturally extends to the air they breathe * * *.

" * * *

"The Court finds that the Legislature implicitly empowered the Town of East Greenwich to regulate smoking in eating facilities as a condition to the issuance of a victualing license."

In *Santos v. City Council of East Providence,* 99 R.I. 439, 443–44, 208 A.2d 387, 389–90 (1965), this Court upheld a city council's decision to revoke a cafe and restaurant's victualing license on grounds of unsanitary conditions. We held that by the enactment of § 5–24–1, "the [L]egislature intended to confer upon town councils a broad power to regulate the operation of places catering to the needs of the public for food and drink to the end that the public interest in health and welfare would be subserved." *Id.* at 443, 208 A.2d at 389. We concluded in *Santos* that the statute entitled municipalities to require licensed victualing establishments "to comply with such ordinary standards of cleanliness and

sanitation as are reasonably necessary to protect the public interest in its health and welfare." *Id.* at 443–44, 208 A.2d at 389. In a continuing line of cases emphasizing that public health concerns must support the regulation of liquor and victualing licensing, we held in *Primiano v. Town Council of Warren,* 115 R.I. 447, 450–51, 347 A.2d 414, 415–16 (1975), that a town council could not point to zoning violations in order to revoke the victualing license of a canteen that otherwise satisfied the department of health's food protection and sanitation regulations. This Court went on to hold that "[t]he entire rationale for the revocation of a victualing license is the existence of a condition on the licensed premises that would imperil the public health." *Id.* at 449, 347 A.2d at 415.

Surely, the documented public health risks of inhaling environmental tobacco smoke (secondhand smoke) bring the regulation of smoking in restaurants well within the scope of § 5–24–2 that "intended to bestow upon the municipal legislative bodies broad power to regulate places catering to the needs of the public for food and drink so that the public health and welfare would not be endangered." *Primiano,* 115 R.I. at 449, 347 A.2d at 415. Although plaintiffs advanced the argument that municipalities may refuse or revoke victualing licenses only for violations of health regulations promulgated by the department of health, we do not construe the statutes or our case law as relegating to towns the status of rubber stamps or enforcement arms of the department of health. On the contrary, the language in § 5–24–1(a) permitting cities and towns "to regulate [victualing houses], including the setting of hours of operation" and the language in § 5–24–2 permitting revocation of victualing licenses "for cause" contemplate

---

**2.** "Victualing house" is defined in the statute as "a business where food is prepared and/or consumed on the premises." General Laws 1956 § 5–24–1(c).

a municipality's implicit authority to attach reasonable conditions to the privilege of licensure. Moreover, the dangers of secondhand smoke were specifically addressed by the department of health in its 1999 health alert. Without expressly authorizing cities and towns to include smoking regulations as conditions of licensure, chapter 24 of title 5 does so by necessary implication.

■ We, therefore, conclude that § 5–24–1 vests the council with the authority to enact Ordinance No. 686, to the extent that smoking restrictions were required as a condition of victualing licensure. Moreover, the Superior Court was correct in upholding the ordinance in its application to restaurants licensed under § 5–24–1. Given that each of the twelve individual plaintiffs is a licensed victualing house, and because all bars must also obtain victualing licenses under § 5–24–1, *El Nido, Inc. v. Goldstein,* 626 A.2d 239, 242 (R.I.1993), the council properly exercised its authority in enacting the ordinance that imposed smoking regulations as a condition for licensing both restaurants and bars.

### Authority Under G.L.1956 §§ 3–5–5, 3–5–15, and 3–5–21

The defendants also contended that the council could regulate smoking in bars through its power to regulate liquor establishments under G.L.1956 §§ 3–5–5, 3–5–15, and 3–5–21. Section 3–5–5 provides in relevant part that "[i]t is lawful in every town * * * to issue licenses for the manufacture, keeping for sale, and sale of beverages in these cities and towns," whereas § 3–5–5 clearly allows municipalities to place conditions on liquor licensure by assigning "[t]he right, power, and jurisdiction to issue all [liquor licenses other than manufacturer's and wholesaler's licenses] * * * in the town councils or license boards of the several towns." Furthermore, § 3–5–21(a) provides: "Every license is subject to revocation or suspension and a licensee is subject to fine by the board, body or official issuing the license, * * * for breach by the holder of the license of the conditions on which it was issued or for violation by the holder of the license of any rule or regulation applicable, or for breach of any provisions of this section."

■ We have held, however, that conditions placed by municipalities on liquor licensure must further the purpose of title 3. *Thompson v. Town of East Greenwich,* 512 A.2d 837, 841–42 (R.I.1986). General Laws 1956 § 3–1–5 expressly declares that the purpose of title 3 is "the promotion of temperance and for the reasonable control of the traffic in alcoholic beverages." Thus, the licensing provisions described *ante* permit towns to regulate for the purpose of controlling alcohol use and distribution. We interpreted these provisions in *El Marocco Club, Inc. v. Richardson,* 746 A.2d 1228, 1237 (R.I.2000), where we held that an ordinance prohibiting nudity at liquor-serving establishments was a proper exercise of a town's title 3 liquor licensing authority to maintain societal order, promote the welfare of the community, and control conduct in drinking establishments. The ordinance at issue before us serves a similar purpose by regulating the harmful behavior of creating secondhand smoke, while promoting and preserving the well-being of patrons and staff. As such, we hold that the ordinance bears a sufficient nexus to the purposes of title 3 to constitute a proper exercise of the town's liquor licensing authority.

### State Preemption

■ It is the position of plaintiffs that any municipal regulation of smoking in eating and drinking establishments has

been preempted by statute, namely, G.L. 1956 chapter 20.6 of title 23. In general, "[a] local ordinance or regulation may be preempted in two ways. First, a municipal ordinance is preempted if it conflicts with a state statute on the same subject. * * * Second, a municipal ordinance is preempted if the Legislature intended that its statutory scheme completely occupy the field of regulation on a particular subject." *Town of Warren v. Thornton–Whitehouse*, 740 A.2d 1255, 1261 (R.I.1999).

The statute at issue provides, in pertinent part, that "[e]ating facilities with a seating capacity of fifty (50) or more persons shall have separate seating for non-smokers and smokers." Section 23–20.6–2(e)(1). The department of health is "authorized to adopt rules and regulations necessary for the implementation and enforcement of this subsection." Section 23–20.6–2(e)(3). Ordinance No. 686 expands those baseline standards by requiring that restaurants of any size either be smoke-free or provide a smoking area enclosed by solid walls, doors with automatic closing mechanisms, exhaust fans, and negative air pressure.

 In our opinion, the enactment of Ordinance No. 686 by the council conforms to the requirements of article 13, section 2, inasmuch as its regulation of smoking in restaurants is "not inconsistent" with the constitution and laws of the state. The trial justice correctly found that "[n]o restaurant or bar in East Greenwich will violate rules and regulations promulgated by the Department of Health if it is bound to comply with stricter regulations." Rather, in our opinion, the more stringent smoking regulations imposed by the town advance the stated purposes of chapter 20.6 of title 23, "to protect the health and atmospheric

environment of the non-smoker by regulating smoking." Section 23–20.6–1. Moreover, nothing in the chapter suggests that the Legislature intended that maximum standards are prescribed therein, and we conclude that the statute sets a floor rather than a ceiling in regulating smoking in restaurants. *See Gara Realty, Inc. v. Zoning Board of Review of South Kingstown,* 523 A.2d 855, 857 (R.I.1987) (holding that Legislature did not intend to preempt municipal regulation by enacting minimum standards in state sewage disposal laws). We conclude therefore that the requirements of Ordinance No. 686 augment rather than conflict with the statutory scheme.

We next consider whether the Legislature intended to occupy the field of regulating smoking in Rhode Island restaurants by enacting § 23–20.6–2 entitled, "Smoking prohibited in certain public areas—Smoking sections in eating facilities." On its face, the statute contains no express reservation of power over the regulation of smoking in eating establishments. Such a reservation, however, need not necessarily be express; rather, it may be implied in the legislative scheme. *O'Neil,* 617 A.2d at 109. Here, there is no indication that the General Assembly even impliedly intended to occupy the field of regulating smoking. Any such intention is refuted first, by the fact that the statute purports to regulate smoking only "in certain public areas," second, by the fact that the Legislature has recognized the authority of municipal bodies to regulate smoking in areas such as public schools G.L.1956 § 23–20.9–11, licensed child care centers, G.L.1956 § 23–28.15–23, and workplaces G.L.1956 § 23–20.7–6,[3] and third, by the fact that the department of health, charged with enforcement of § 23–20.6–2(e), interprets

---

**3.** General Laws 1956 chapter 20.7 of title 23, the Workplace Smoking Pollution Control Act, may provide additional support for the town's position, but because that statutory basis was not raised here, we do not address it.

that statute "as allowing local governments to adopt ordinances which provide stricter controls on smoking." In its enactment of statutes regulating smoking, the General Assembly at no time disclosed, by implication or otherwise, its intent to occupy exclusively the field of regulating smoking as the Legislature explicitly did in G.L.1956 § 39–1–1(c), when it preempted local regulation of utilities. *See Town of East Greenwich v. Narragansett Electric Co.,* 651 A.2d 725, 729 (R.I.1994).

The issue of preemption has appeared in case after case in which we have reviewed a municipality's authority under home rule. The dueling issues of local authority and state preeminence often intersect because home rule requires an analysis of whether the issue is of local or statewide concern, whereas preemption requires an analysis of whether the issue is implicitly reserved within the state's sole domain. An early case in the jurisprudence of these issues is *Maher, see ante,* which held that the licensing of mechanical amusement devices and juke boxes fell within the exclusive purview of the Legislature. But *Maher* stands for more than that conclusion. The *Maher* Court also determined that "whether or not the [home rule ordinance] itself is erroneous depends upon whether the [L]egislature has authorized cities and towns to license such [an activity]." *Maher,* 92 R.I. at 57, 166 A.2d at 219. Thus, even in *Maher,* at a point in time when the Court apparently was attempting to limit home rule powers, the Court restricted its holding to fields—such as education, elections, and taxation—that the Legislature has manifestly, uniquely controlled and never delegated.

This case represents a different scenario. The General Assembly crossed the Rubicon of delegation here by specifically granting to cities and towns the authority to license establishments serving alcohol and food. Thus, by strong implication, the Legislature indicated that cities and towns could exercise discretionary authority in regulating the service of food and beverages and in defining the context in which those activities would take place. The statutes here are not inconsistent with Ordinance No. 686 but provide only a skeletal or baseline standard for licensing, leaving to cities and towns the addition of flesh-and-blood details by ordinance, unless the Legislature by express language or action directs otherwise.

■ In sum, it is our opinion that Ordinance No. 686 is not inconsistent with state laws regulating smoking and that the statutory scheme neither expressly nor by necessary implication exclusively occupies the field of regulation of smoking in restaurants.

## Conclusion

■ We conclude that the town has the power to regulate smoking in eating establishments pursuant to chapter 24 of title 5 and chapter 5 of title 3 and that Ordinance No. 686 is not preempted by state law. Consequently, the town did not exceed its authority in enacting the ordinance. Accordingly, we vacate the stay issued by this Court on March 19, 2001, deny and dismiss the plaintiffs' appeal, and affirm the judgment of the Superior Court, to which the papers of this case may be returned.

GOLDBERG, Justice, concurring in part, dissenting in part, and concurring in the judgment.

Although I wholeheartedly endorse the judgment in this case, I would have arrived at this result with greater restraint. I am of the opinion that municipalities have never been authorized by the General Assembly to prohibit and regulate smoking in restaurants and "victualing houses." Moreover, in my judgment, the Legisla-

ture, by its enactment of G.L.1956 § 23–20.6–2(e)(1) prohibiting smoking in certain enumerated public places, including "[e]ating facilities with a seating capacity of fifty (50) or more persons" has preempted the field of regulation as it relates to restaurants and "victualing houses" and further, the cities and towns may not enact ordinances that regulate these establishments. I am also convinced, however, that by specifically excluding from the provisions of the statute the regulation of "bars, nightclubs [and] lounges," the Legislature has left the regulation of these establishments where it has traditionally reposed since the end of prohibition, with the cities and towns, a situation that has been long recognized by this Court. Further, I conclude that by its enactment of G.L.1956 § 3–5–21,[4] the municipalities have been specifically delegated regulatory authority, including the power to impose conditions upon a licensee.

### Regulation of Bars, Nightclubs, Lounges, and Dance Clubs

In my opinion, the Town of East Greenwich (town) is free to regulate and prohibit smoking in all licensed establishments where alcohol is served. Thus, I believe that this case should be decided by reference to the authority of the cities and towns to issue liquor licenses and to regulate activities within these licensed premises. I disagree with the expansive holding of the majority relative to the town's authority over victualer licenses. First, and most noteworthy, each plaintiff is the holder of a class B alcohol beverage license as well as a victualer license. Were we to

decide the case by reference to the clear delegation of regulatory authority over liquor licenses to the cities and towns, we need not reach the issues relative to the Home Rule Charter Amendment to the Rhode Island Constitution and would accord allegiance to our well settled rule that this Court "will not decide a constitutional question raised on the record when it is clear that the case before it can be decided" on other grounds such that the determination of the constitutional question is not "indispensably necessary for the disposition of the case." *State v. Pascale*, 86 R.I. 182, 185, 134 A.2d 149, 151 (1957). This rule has been of particular relevance and importance in cases involving issues of state law preemption. *See State v. Berberian*, 80 R.I. 444, 445, 98 A.2d 270, 271 (1953) (Supreme Court will not decide a constitutional question unless it is indisputably necessary for disposition of the case). Accordingly, in my opinion this case ought to be decided by reference to title 3 of the General Laws and not title 5.

The fact that "an alcohol beverage licensee holds his license subject to regulatory restrictions, however burdensome, when adopted pursuant to a valid exercise of the police power is so well settled as to require neither discussion nor citation of authority." *Lyons v. Liquor Control Administrator*, 100 R.I. 573, 576, 218 A.2d 1, 3 (1966). Since the repeal of prohibition in 1933 by the ratification of the Twenty–First Amendment to the United States Constitution, the decision to issue alcohol beverage licenses has rested with the qualified electors of the cities and towns. With the

---

4. **General Laws 1956 § 3–5–21**, provides:

 "**Revocation or suspension of licenses—Fines for violating conditions of license.**—(a) Every license is subject to revocation or suspension and a licensee is subject to fine by the board, body or official issuing the license, or by the depart-

ment or by the division of taxation, on its own motion, for breach by the holder of the license of the conditions on which it was issued or for violation by the holder of the license of any rule or regulation applicable, or for breach of any provisions of this section."

exception of the Town of Barrington,[5] the electors of thirty-eight cities and towns voted in favor of issuing licenses for the sale of intoxicating liquor within their borders. *Board of License Commissioners of Portsmouth v. Daneker*, 78 R.I. 101, 105, 79 A.2d 614, 616 (1951). This Court has declared that the sale in this state of intoxicating liquor is " 'so clearly and completely subject to exercise of the police power of the State that it may even be entirely prohibited by the State * * * or it may be permitted subject to such restrictions and burdens, however great, as the State Legislature may deem it advisable to impose * * *,' " so long as the regulations do not violate either the Equal Protection or Due Process Clauses of the United States Constitution. *Sepe v. Daneker*, 76 R.I. 160, 165, 68 A.2d 101, 104 (1949). Consistent with this exercise of sovereignty, the Legislature has delegated to the cities and towns enabling authority to make " 'such rules and regulations by the licensing authority of the several towns and cities as in their respective discretions in the public interest shall seem proper to be made.' " *Id.* The prohibition of smoking in these licensed establishments, in my opinion, falls within this delegated authority, and constitutes a reasonable regulation enacted pursuant to the town's police power.

In *Thompson v. Town of East Greenwich*, 512 A.2d 837, 840 (R.I.1986), this Court reversed a decision of the Superior Court that declared that regulations requiring that all persons vacate the premises within one hour after closing were invalid because " '[n]owhere in the law [was] there an express delegation of power [by the General Assembly] to local authorities to enact and promulgate conditions of this kind [upon] the issuance of a liquor li-

cense.' " We held that the authority to issues licenses granted by the General Assembly to the cities and towns was "logically and appropriately complemented by § 3–5–21, which legislatively empowers these same governing bodies to revoke or suspend a liquor license for breach of any conditions upon which it was issued." *Thompson*, 512 A.2d at 841. We concluded that by conferring the power to revoke or suspend, the Legislature intended to "implicitly authorize municipalities to attach conditions to the issuance of liquor licenses." *Id.* We rejected the holding of the trial judge that the absence of any specific standards governing what types of conditions may be imposed rendered § 3–5–21 invalid as an unconditional delegation of legislative power. *Thompson*, 512 A.2d at 842. We noted that the General Assembly mandated that its enactments concerning liquor control be liberally construed "in aid of its declared purpose which declared purpose is the promotion of temperance and for the reasonable control of the traffic in alcoholic beverages." *Id.* (quoting G.L.1956 § 3–1–5). We simply held that "*any* conditions that a municipality may choose to enforce upon the issuance of a liquor license must be *reasonable.*" *Id.* (Emphases added.) I am satisfied that the restrictions contained in Ordinance No. 686 are more than reasonable and withstand judicial scrutiny.

Moreover, in the recent decision of *El Marocco Club, Inc. v. Richardson*, 746 A.2d 1228 (R.I.2000), this Court again rejected the argument that the General Assembly had intended to occupy the field of alcohol beverage regulation; we reaffirmed our holding that the cities and towns are vested with significant regulatory authority with respect to taverns, bars and

---

**5.** The electors of the Town of Barrington have subsequently revisited this question and li-

quor is available for purchase in Barrington.

nightclubs within their jurisdiction and concluded that this authority extended to the prohibition and regulation of nude dancing in licensed premises. I am equally satisfied that this regulatory authority encompasses the ordinance currently before this Court.

### Regulation of Restaurants Pursuant to Chapter 24 of Title 5 of the General Laws

This Court has held that the power to license is an aspect of sovereignty and is vested exclusively in the state. Absent a specific delegation of authority, a municipality is without jurisdiction to issue licenses or to otherwise regulate businesses. *Nugent v. City of East Providence,* 103 R.I. 518, 238 A.2d 758 (1968). Thus, notwithstanding the enactment by the people of East Greenwich of a Home Rule Charter, in the absence of a specific delegation of regulatory authority over eating establishments, the town is without the power and authority to impose these mandatory and affirmative conditions upon the holder of a victualer license. In my opinion, although the Legislature has delegated to the cities and towns "the power to regulate, including the setting of hours of operation, the keeping of taverns, victualing houses, cookshops, oyster houses and oyster cellars," G.L.1956 § 5–24–1(a), by licensing these establishments, this power does not extend beyond the right to revoke a license "where it is determined that there has been a failure to maintain the premises and equipment used therein in a condition of cleanliness and wholesomeness[.]" *Santos v. City Council of East Providence,* 99 R.I. 439, 443, 208 A.2d 387, 389 (1965). We have held that in establishments in which a licensee fails to observe "even ordinary and minimal standards of cleanliness and sanitation," the licensing authority "has not only the right but the duty to withdraw the license[.]"

*Id.* Further, cause to revoke a victualer license "may be established on a showing of any failure to comply with such ordinary standards of cleanliness and sanitation as are reasonably necessary to protect the public interest in its health and welfare." *Id.* at 443–44, 208 A.2d at 389. We have never extended the reach of this authority beyond minimal standards of sanitation and cleanliness. Indeed, in *El Nido, Inc. v. Goldstein,* 626 A.2d 239 (R.I.1993), we held that the City of Pawtucket had limited authority to review a validly issued victualer license and only "to establish whether there is cause to revoke [the] license, namely, whether there has been 'any failure to comply with such *ordinary standards of cleanliness and sanitation* as are reasonably necessary to protect the public interest in its health and welfare.' " *Id.* at 242–43 (quoting *Santos,* 99 R.I. at 443–44, 208 A.2d at 389)). (Emphasis added.) I am not in agreement that we should extend the reach of § 5–24–1 beyond these holdings.

In my opinion, by its enactment of Ordinance No. 686, the town has far exceeded its limited authority to regulate its licensed restaurants consistent with "ordinary standards of cleanliness and sanitation," and was not authorized to impose conditions on restaurants that, according to the ordinance, "help to ameliorate the dining experience for non-smokers in those licensed premises where smoking is allowed." Ordinance No. 686, Town of East Greenwich, Code of Ordinances, Sec. 10–300. Significantly, Ordinance No. 686 defines restaurant to mean *any* eating establishment, including,

"coffee shops, cafeterias, luncheonettes, sandwich stands, diners, short order cafes, fast food establishments, soda fountains, and any other commercial eating or beverage establishment (other than a bar) including restaurants located

in a hotel or motel, or part of any organization or club where facilities are rented out to the public, boardinghouse or guest house, which is licensed by the Town of East Greenwich to sell food or beverage to the public, guests or patrons, where the food (is) or beverages are customarily consumed on the premises, but not an establishment whose (primary) and sole purpose is to serve food or beverages to employees of a common employer or to students of a common educational institution." Ordinance No. 686, Sec. 10–301.

This exceedingly broad ordinance also includes enforcement provisions that likewise lack statutory authorization. Section 10–303(1) of Ordinance No. 686 entitled "Enforcement" provides for mandatory attendance at "a tobacco education session conducted by the town's drug program coordinator, and a written reprimand" for a first offense. Second offenses require mandatory tobacco education and a written warning and third offenses carry the penalty of a license suspension or revocation. Although the ordinance is laudable, long overdue and certainly in the public interest, I do not believe that the town is vested with the authority to issue a written reprimand, suspend a victualer license, (as opposed to a revocation for serious departures from "ordinary standards of cleanliness and sanitation"), or to require attendance "at a tobacco education session conducted by the town's drug program coordinator." I therefore conclude that Ordinance No. 686 was enacted without delegated legislative authority to the town to impose conditions on holders of victualer licenses.

### Preemption

Although, as this Court has recently held that "preemption only exists in circumstances in which the municipality would have the authority to regulate a particular subject in the absence of state action[,]" *Town of Warren v. Thornton–Whitehouse*, 740 A.2d 1255, 1261 (R.I. 1999), and although I am of the opinion that the enforcement authority encompassed in Ordinance No. 686 is without legislative support, I also believe that the regulation of smoking in restaurants has been preempted by the Legislature. In my opinion, Ordinance No. 686 fails both preemption tests adopted by this Court. First, it conflicts with a statewide enactment on the same subject and, second, the Legislature has "intended that its statutory scheme completely occupy the field * * * [.]" *Id.* In considering the issue of preemption, this Court has traditionally looked to the legislative findings and policy considerations that underlie a statutory scheme. Indeed, in examining the enabling act creating the Coastal Resources Management Council (CRMC), the Legislature's findings that protection and preservation of the state's coastal resources were "essential to the social and economic well-being of the people of Rhode Island," led us to conclude that the CRMC had exclusive jurisdiction over noncommercial residential boat wharves, and that piecemeal regulation of boat wharves by the cities and towns was not in the public interest. *Id.* at 1262 (quoting G.L.1956 § 46–23–1(b)).

A similar examination of the declared purpose of chapter 20.6 of title 23 leads me to conclude that the General Assembly intended to occupy the field of regulation relative to smoking in restaurants:

"**Legislative intent.**—The use of tobacco for smoking purposes is being found to be increasingly dangerous, not only to the person smoking, but also to the non-smoking person who is required to breathe the contaminated air. The most pervasive intrusion of the non-smoker's right to unpolluted air space is

the uncontrolled smoking in public places. *The legislature intends, by the enactment of this chapter, to protect the health and atmospheric environment of the non-smoker by regulating smoking in certain public areas.*" Section 23–20.6–1. (Emphasis added.)

Among those "certain public areas" are "[e]ating facilities with a seating capacity of fifty (50) or more persons [that] shall have separate seating for nonsmokers and smokers." Section 23–20.6–2(e)(1). Thus, I am convinced that the General Assembly has signaled its intent to occupy the field of regulation relative to the state's restaurants and other eating facilities. With respect to smaller eating facilities that seat fewer than fifty patrons, in my opinion the General Assembly has elected to exempt these establishments from regulation based upon their size. Clearly, Ordinance No. 686 is in conflict with this provision because it imposes conditions upon every conceivable place one can obtain nourishment upon furnishing consideration. Further, by its enactment, I am of the opinion that the General Assembly intended to prevent the unhappy consequence of the thirty-nine municipalities imposing varying and conflicting standards on every restaurant and coffee shop in the state.

The second way that a local regulation can be preempted is if the ordinance is in conflict with a state statute on the same subject. Ordinance No. 686 conflicts with chapter 20.6 of title 23 in several important respects. First, § 23–20.6–2(c) provides for specific penalties for any person who violates the provisions of chapter 20.6, including a fine of not less than $50, nor more than $500, for "contributing to the maintenance of a public nuisance in a public place." In contrast, Ordinance No. 686 is enforced by written reprimands, mandatory attendance at educational seminars and license suspension and revocation.

Clearly, these provisions are in direct conflict with state law. Second, Ordinance No. 686 encompasses eating facilities that seat fewer than fifty patrons, in direct conflict with § 23–20.6–2(e)(1) in which these facilities are exempted. Further, contrary to state law, the ordinance prohibits restaurant service to any patron under the age of eighteen in any area where smoking is permitted. Thus, in several significant respects the ordinance directly and substantially conflicts with a state statute on the same subject.

The majority seeks to avoid this analysis by adopting a new doctrine—preemption will be overlooked when the local regulation is *broader* than the state statute. This is a novel approach to a preemption analysis and is in conflict with previous pronouncements of this Court in which we have specifically struck down, as preempted by state law, municipal regulations that are broader and encompass more conduct than a state statute on the same subject matter. In *Pascale*, we voided a municipal ordinance making unlawful any failure to comply with any lawful order, signal or direction of a police officer on the ground that it was preempted by a state statute making it unlawful " 'to *willfully fail* or refuse to comply with any lawful order or direction of any Police Officer * * *.' " *Pascale*, 86 R.I. at 185, 134 A.2d at 151. We held that the ordinance encompassed any disobedience to a police officer whether it was willful or not, and consequently it impermissibly extended and broadened the scope of the state statute. Moreover, in the leading preemption case of *Wood v. Peckham*, 80 R.I. 479, 481, 482, 98 A.2d 669, 670 (1953), this Court struck down an ordinance that regulated "cleanliness, sanitary matters, [and] the right of inspection" of camp grounds and trailer and tourist camps in the Town of Middletown that "insofar as matters of sanitation [were] concerned, [contained] the same general

treatment, requirements and coverage" as the statute. We adopted the view that,

> "where a state legislature has made provision for the regulation of conduct in a given situation and has provided punishment for the failure to comply therewith, it has shown its intention that the subject matter is fully covered by the statute and that a municipality under its general powers cannot regulate the same conduct or make the same act an offense also against a municipal ordinance." *Id.* at 483, 98 A.2d at 670.

We therefore held that when the General Assembly enacts a statute having statewide application "in the exercise of the police power primarily for the welfare of the general public and in the interest of preventing the existence * * * of unsanitary and unhealthful conditions which might affect the state as a whole[,]" a local ordinance is invalid when it invades a field that "the state has intentionally and specifically covered and pre-empted * * *[.]" *Id.* at 483, 483–84, 98 A.2d at 671. Neither in *Wood* nor any other preemption case has this Court engaged in a parsing of the ordinance to determine, as the majority holds, whether "the more stringent smoking regulations imposed by the town advance the stated purposes" of the statute. We have consistently and unfailingly held that a "municipal ordinance is preempted if it conflicts with a state statute on the same subject." *Town of Warren,* 740 A.2d at 1261. We have never upheld an ordinance on the ground that, although broader and more encompassing than a state enactment, it advances the legislative intent. Rather, we look to the language of the ordinance to determine whether it conflicts with state law. Our function is not to overlook local regulations that conflict with state law simply because, as the majority holds, the requirements of the ordinance "augment rather than conflict with the statutory scheme." In my opinion, if the General Assembly intended to share its regulatory authority over eating facilities, it unequivocally would have done so. Significantly, when the General Assembly enacted the "Smoking Restrictions in Schools Act," G.L.1956 § 23–20.9–1, it specifically included a preemption provision that provided as follows:

> "**Preemption.**—Nothing contained in this chapter shall be construed to restrict the power or authority of any Rhode Island city, town or other legal subdivision to adopt and enforce additional local laws, ordinances, or regulations that comply with at least the minimal applicable standards to establish smoke free schools. as set forth in this chapter." Section 23–20.9–11.

Accordingly, I am satisfied that the General Assembly is perfectly capable of adopting regulations that comprise the floor in a given area and of leaving the erection of the ceiling to the cities and towns. It simply did not do so here.

## Conclusion

For the reasons stated herein, I would affirm in part and reverse in part. In my opinion, the town is authorized to regulate all alcohol beverage licensees pursuant to title 3 of the General Laws, but is without the authority to regulate holders of victualer licenses. I further conclude that the regulation of eating establishments has been preempted by the General Assembly. Therefore, I concur in part, dissent in part, and concur in the judgment.