**CITY OF EAST PROVIDENCE**

v.

**PUBLIC UTILITIES COMMISSION.**

No. 89–331–M.P.

Supreme Court of Rhode Island.

Dec. 6, 1989.

James Purcell, Partridge, Snow & Hahn, Providence, William R. Conley, Jr., City Sol., East Providence, for plaintiff.

Robert A. Pitassi, George E. Lieberman, Fausto Anguilla, Licht & Semonoff, Adri-enne G. Southgate, Chief Legal Counsel, P.U.C., Providence, for defendant.

## OPINION

MURRAY, Justice.

This case comes before the court on a writ of certiorari from the Rhode Island Public Utilities Commission (commission). In a declaratory judgment the commission ruled that G.L.1956 (1984 Reenactment) § 39-1-30, which requires an appeal to the commission of ordinances and regulations affecting companies "under the supervision of the commission," does not apply to the respondents Rhode Island Cogeneration Associates, Newbay Corporation, and OEIG Limited Partnership (Newbay) as Newbay is neither a "public utility" nor an "electric utility" under the supervision of the commission. We find that the commission was correct in its ruling and hereby affirm.

This case arises from the following facts. Newbay plans to construct, own, and operate a combined-cycle cogeneration plant in East Providence. The plant will sell approximately 72.5 megawatts of electricity to the New England Power Company and eleven member utilities of the Massachusetts Municipal Light Companies. These sales are planned pursuant to wholesale sales contracts. The commission found that these contracts were negotiated at arm's length without Newbay's exercising market power over the purchasers.

Newbay also plans to sell process steam to a manufacturing plant (Highland) which is to be built on a site adjacent to Newbay's plant. Newbay's facility will be integrally and structurally related to the Highland plant via a permanent underground steam pipe. The commission found that this contractual arrangement was also negotiated at arm's length. Newbay had no market power over Highland's supply of alternative sources of steam.

On May 25, 1989, Newbay filed with the commission a petition for declaratory judgment requesting that the commission find that § 39-1-30 does not apply to Newbay

because Newbay is not a "public utility" subject to the commission within the meaning of § 39–1–2, as amended by P.L.1988, ch. 580, § 1. Newbay also appealed an ordinance of the city of East Providence (city), chapter 64, article IV, section 10–54 (ordinance), which prohibits the industrial use of coal within the city. The commission never reached the issue of the validity of the ordinance because of its finding that Newbay is not under the supervision of the commission.

 The first issue we consider is that of the city's standing to seek judicial review of the commission's declaratory judgment. Newbay argues that the city has no standing to petition this court for review of the commission's ruling. We reject this contention and hold that in order to have standing to seek appellate review pursuant to G.L.1956 (1984 Reenactment) § 39–5–1, the city need only be "aggrieved." *Newport Electric Corp. v. Public Utilities Commission,* 454 A.2d 1224, 1225 (R.I. 1983). In the *Newport Electric Corp.* case we found that the electric corporation was not "aggrieved" because the corporation did not demonstrate "adverse effect upon its property, income, or indeed even its investment potential." *Id.* In contrast, in this case the city is able to demonstrate a potential adverse effect on property within the city if Newbay's coal burning cannot be regulated by the commission. We find, therefore, that the city has experienced injury in fact, sufficient to confer standing, by the commission's refusal to adjudicate the city's ordinance.

In addition, we have held that the issue of standing need not be strictly construed in cases involving substantial public interest. *Blackstone Valley Chamber of Commerce v. Public Utilities Commission,* 452 A.2d 931, 933 (R.I.1982). This is one such case. The city is the appropriate party to represent the interests of the residents of East Providence who are injured by the commission's denial of the opportunity to justify the city's ordinance in the administrative arena of the commission.

 The second issue we consider is that of the standard of review to apply to the commission's finding. We have repeatedly held that we will show great deference to the factfinding of the commission. *E.g, Town of New Shoreham v. Burke,* 519 A.2d 1127, 1130 (R.I.1987); *New England Telephone & Telegraph Co. v. Public Utilities Commission,* 446 A.2d 1376, 1380 (R.I.1982). Section 39–5–3 provides that "[a]n order or judgment of the commission made in the exercise of administrative discretion shall not be reversed unless the commission exceeded its authority or acted illegally, arbitrarily or unreasonably." This case, however, does not involve a dispute over the facts ascertained by the commission, nor does it involve an act within the Commission's "administrative discretion." Instead the dispute relates to statutory interpretation that is a question of law for which the Supreme Court has the ultimate responsibility. *Gryguc v. Bendick,* 510 A.2d 937, 939 (R.I.1986) (citing *Berkshire Cablevision of Rhode Island, Inc. v. Burke,* 488 A.2d 676, 679 (R.I.1985)). We will therefore review the commission's findings of law under a de novo standard. This is the standard of review applied to administrative questions of law under the Federal Administrative Procedure Act. 5 U.S.C.A. § 706 (West 1977). *See also Rowse v. Platte Valley Livestock, Inc.,* 597 F.Supp. 1055 (D. Neb.1984) (the jurisdiction of an agency is an issue of law subject to a de novo standard of review).

We now consider the underlying issue at hand: whether the commission was correct in finding that Newbay may not appeal to the commission pursuant to § 39–1–30. According to § 39–1–30, rulings, decisions, and orders are reviewable to the commission if the company involved is "under the supervision of the commission." We must therefore determine whether Newbay is under the commission's supervision.

In determining whether title 39 contemplates including Newbay within the supervision of the commission it is important to keep § 39–1–1, the "Declaration of Policy" section, in mind. The language set forth by the General Assembly makes it clear that the purpose of the commission is to oversee utility companies offering commu-

nication and transportation services and water and energy supplies "to the public." For example, one such purpose for the commission is "protecting them and the public against improper and unreasonable rates, tolls and charges by providing full, fair and adequate administrative procedures and remedies * * *." Section 39–1–1. In other words, title 39 gives the commission the power to supervise only those companies that supply energy and services to the public. This interpretation is supported by the definition of "electric utility" set forth in § 39–20–2(c). Here the General Assembly contemplated that the "electric utility" would generate electricity "for ultimate consumption by the public." Section 39–20–2(c).

■ The city argues that Newbay can be considered an "electric utility" as defined in § 39–20–2(c) for the purpose of allowing review under § 39–1–30. The city does not accept the commission's ruling that § 39–20–11 limits the access to § 39–1–30. Section 39–1–30, however, requires that supervision be exercised over only those utilities under the commission's supervision; § 39–20–11 expounds on the types of electric utilities to which § 39–1–30 applies; and § 39–20–2(c) defines "electric utility." According to § 39–20–2(c), an "electric utility" must be "engaged in the generation and sale or purchase and sale of electricity, or the transmission thereof." Newbay is not, however, currently operating facilities for the purchase and sale of electricity. Therefore, Newbay cannot be considered an electric utility until operations actually commence. In addition, although the city does not appear to claim that Newbay is a "public utility" within the supervision of the commission, we assert that Newbay is decidedly not a "public utility" because the definition contemplates current operation. Section 39–1–2(7).

We find this interpretation of the statute consistent with the underlying policy of title 39. Although the public has an interest in the construction of Newbay's plant, the public's interest is not yet connected with Newbay's behavior as a utility. In other words, the city is "aggrieved" suffi-

ciently to invoke standing because Newbay's construction will adversely affect its "property, income, or * * * investment potential." The city is not, however, aggrieved because of Newbay's behavior as an "electric utility" so as to invoke the supervision of the commission. *See Newport Electric Corp.*, 454 A.2d at 1225.

■ The city also argues that Newbay falls within the definition of "electric generating facilities." Section 39–20–2(f). Section 39–20–2(f) defines an electric generating facility as one that generates electrical units of "five hundred (500) megawatts or above." The commission found that Newbay will sell only 72.5 megawatts of electricity. As this finding was not disputed by the city, we fail to see how a facility that will generate 72.5 megawatts of electricity can claim to be an "electric generating facility" within the meaning of the statute which requires that a facility generate 500 megawatts of electricity. Moreover, no other meaning may be attributed to the plain meaning of § 39–20–2(f), which requires a facility to generate more than 500 megawatts in order to be considered an electric generating facility within the meaning of the statute. *See Providence Journal Co. v. Mason*, 116 R.I. 614, 624, 359 A.2d 682, 687 (1976).

This interpretation of § 39–20–2(f) also comports with the general policy of the chapter as provided in § 39–1–1. The General Assembly intended the commission to supervise those electrical facilities which could impact the public. As the commission stated in its February 3, 1989 declaratory judgment in *Pawtucket Power Associates Limited Partnership*, "small customer bases such as this have invariably been deemed by the Commission as de minimus in scope and thereby insufficient to trigger the regulatory process." Newbay likewise has *no market share* of the supply of electricity so as to require the supervision of the commission.

In conclusion, we refuse to resort to a strained interpretation in order to find that Newbay is within the jurisdiction of the commission when the plain language of the statute reveals that it is not. We presume that the language of the statutes has been

carefully adopted by the General Assembly so as to be deliberate and not mere surplusage. *Brennan v. Kirby*, 529 A.2d 633, 637 (R.I.1987) (citing *State v. Gonsalves*, 476 A.2d 108, 110–11 (R.I.1984)). We also interpret the statute in its entirety "in light of circumstances and purposes that motivated its passage." *Brennan*, 529 A.2d at 637 (citing *Shulton, Inc. v. Apex, Inc.*, 103 R.I. 131, 134, 235 A.2d 88, 90 (1967)).

We find that the commission's statutory interpretation was appropriate. The petition for certiorari is denied, the writ previously issued is quashed, and the decision of the commission is affirmed. The case is remanded to the commission with our decision endorsed thereon.