DECISION
Before this Court is an appeal from a decision of the Newport City Council ("City") sitting as Licensing Board. The City fined VVSI, Inc. ("VVSI or Appellant") $1,000.00 and suspended its victualing license for one week for violation of G.L. 1956 § 5-24-1. The penalties have been stayed pending appeal. Jurisdiction is pursuant to the Rhode Island Administrative Procedures Act. G.L. 1956 § 42-35-15.
 I Facts Travel
This case generally concerns the powers of the Newport City Council in regard to a food vendor's violations of the terms of his victualing license, and specifically the validity of the penalties imposed by the City: a one-week license suspension and $1,000.00 fine. On May 7, 2008, VVSI applied for and was granted a victualing license by the City of Newport to operate a "Pizza Hollywood" restaurant at 397 Thames Street, Newport, Rhode Island. Rhode Island General Laws § 5-24-1 permits municipalities to grant and regulate victualing licenses, but limits *Page 2 
the control municipalities may exercise over operating hours: "all licenses issued pursuant to this section entitle the license holder to operate continuously after six o'clock (6:00) A.M. but not after two o'clock (2:00) A.M." The law also provides for a procedure by which a license holder may seek permission to operate earlier than 6:00 a.m. or later than 2:00 p.m. Section 5-24-1(b).
On August 31, 2008, at 2:03 a.m., Officer Dennis Sullivan performed a routine check of Appellant's Pizza Hollywood restaurant at the request of the City, pursuant to an anonymous complaint. Officer Sullivan observed about twelve customers inside the restaurant and another six to eight people in the restaurant's outdoor café area. Officer Sullivan did not observe money changing hands, but he did see clerks preparing and serving pizza. The last group of customers received its pizza at 2:20 a.m and remained seated inside the restaurant. (R. Ex. 1(c).)
The next night, September 1, 2008, at around 2:15 a.m., Officer Eric M. Geoghegan and Officer Belcher noticed activity at Appellant's restaurant while on bicycle patrol of Thames Street. Officer Geoghegan saw about six people seated inside the restaurant eating pizza. He also saw a couple enter the restaurant to pay for and pick up a pizza. James Long ("Long"), owner of VVSI, Inc., told the officers that the order of the pizza, which purportedly occurred before 2:00 a.m., was the operative "sale;" and as such the later payment and retrieval of the pizza did not constitute an after-hours sale. Officer Geoghegan reminded Long of the law requiring him to cease conducting business after 2:00 a.m., but Mr. Long insisted that he had done nothing wrong. When Officer Geoghegan asked Long if he required police assistance in asking the patrons to leave, Long declined and turned to his customers, telling them "you guys have to go, before they [pointing to the officers] start crying." (R. Ex. 1(d).)
On September 3, 2008, City Manager Edward F. LaVallee wrote a memorandum to the City Council recommending action on Appellant's "apparent violation" of the law. (R. Ex. 1.) *Page 3 
The City ordered Appellant to appear at a Show Cause Hearing on September 24, 2008. Appellant, through his attorney, admitted to the two (2) violations and to a previous after-hours violation in July of 2008. The first violation resulted in the imposition of a $1,000.00 fine on August 13, 2008. (R. Ex. 2. at 2.) Appellant contended that his violations were the result of his stupidity — he was genuinely confused as to what constituted "conducting business" after 2:00 a.m. — not arrogance. Id. City Mayor Stephen C. Waluk countered by quoting Appellant's statement to Officer Geoghegan that the officers would "start crying" if Appellant did not close the restaurant. Id. Appellant claimed the officers misinterpreted that statement; Appellant says he toldthe customers not to cry about being asked to leave.Id.
The City was not persuaded by Appellant's version of the events. The City found that Appellant had violated the hours-of-operation term of his victualing license and imposed the sanction: a $1,000.00 fine and one-week suspension to begin on September 26, 2008. (R. Ex. 2. at 3.) Five council members voted in favor of liability and sanction, one opposed it. Id. Appellant appealed the City's decision to the Superior Court, which granted a stay of enforcement of the decision on September 25, 2008.
 II Standard of Review
The Superior Court's review of an appeal of an agency decision is governed by G.L. 1956 § 42-35-15(g), which provides:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions; *Page 4 
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted use of discretion.
This Court, sitting as an appellate court with a limited scope of review, is not permitted to substitute its judgment for that of an agency with respect to the credibility of the witnesses or the weight of the evidence as to questions of fact. State Div. ofPers. v. State Pers. Appeal Bd.,2008 WL 693610 (R.I. Super. 2008) (citing Ctr. for Behav'l Health v.Barros, 710 A.2d 680, 684 (R.I. 1998); Mine Safety AppliancesCo. v. Berry, 620 A.2d 1255, 1259 (R.I. 1993)). "The Superior Court is confined to a determination of whether there is any legally competent evidence to support the agency's decision." Envt'lScientific Corp. v. Durfee, 621 A.2d 200, 208 (R.I. 1993). Thus, "if the decision below was based on sufficient legally competent evidence in the record, the reviewing court is obliged to affirm the agency's decision." Johnston Ambulatory Surgical Assocs., Ltd. v.Nolan, 755 A.2d 799, 805 (R.I. 2000).
The Court is not bound, however, by an administrative agency's determinations as to questions of law; the Court will review these questions de novo. Arnold v. R.I. Dep't ofLabor Training Bd. of Review, 822 A.2d 164, 167 (R.I. 2003). Thus, considerations of agency jurisdiction and statutory interpretation are questions of law for which the Court is ultimately responsible. City of East Providence v. Pub. Util.Comm'n, 566 A.2d 1305, 1307 (R.I. 1989).
The Court evaluates the agency's sanctioning decisions under § 42-35-15(g)(6). An agency's sanction is arbitrary, capricious, and/or an abuse of discretion where the sanction is "unwarranted in law . . . or without justification in fact."Kulkin v. Bergland, 626 F.2d 181, 184 (1st Cir. 1980) (quotingButz v. Glover Livestock Comm'n Co., 411 U.S. 182, 185-86
(1973)) *Page 5 
(interpreting the analogous federal provision). Stated another way by the Rhode Island Supreme Court, an abuse of discretion occurs when an agency "exceed[s] its jurisdiction" by imposing a sanction in excess of statutory authority. Cadillac Lounge, LLC v. City ofProvidence, 913 A.2d 1039, 1042 (R.I. 2007) (quotingCadillac Lounge, LLC v. City of Providence, 763 A.2d 993, 995
(R.I. 2001)). Examination of an agency's statutory authority is a question of law to be addressed de novo. City of EastProvidence, 566 A.2d at 1307.
 III Analysis
It is undisputed that state law authorizes city councils to regulate the food and drink service industry through licensing schemes. Further, it is undisputed that the City may impose a fine of up to $1,000.00 for violating any ordinance generally, including those governing victualing licenses. The dispute here concerns whether the violation that occurred warranted the imposition of a fine and suspension; whether the circumstances did in fact justify imposition of the maximum allowable fine; and whether the law permits the City to suspend a victualing license for violation of the licensing terms.
 A The Fine 1. Generally
Appellant contends that the City cannot suspend its license or impose the maximum fine because the operating-hours violation did not imperil the public health. Appellant cites Primiano v. TownCouncil of Warren for support, but does not suggest a statutory ground upon which this Court may overturn the agency's decision.115 R.I. 447, 347 A.2d 414 (1975). Appellant also argues that imposition of the maximum fine, albeit for a third offense, was "arbitrary and *Page 6 
capricious" also because of the Primiano reasoning and because Appellant's violation was based on a mistaken understanding of the law, not upon ill intent.
Appellant's reliance on Primiano is misplaced because the case is neither factually nor legally analogous to the case at hand. In Primiano, the Rhode Island Supreme Court quashed the Warren Town Council's revocation of a victualing license where the license holder's husband violated a zoning ordinance by moving the restaurant 150 feet. Id. Our Supreme Court reasoned that the zoning violation was not a sufficient "cause" to revoke a victualing license because the violation — moving the structure 150 feet closer to the street — did not offend the purpose of victualing license terms, protection of the public health. Id. at 450,347 A.2d at 415-16.
Appellant argues that Primiano requires the Court to critically examine the proscribed conduct in light of the purposes behind proscribing it in order to uphold the sanction. ThePrimiano case does not compel such analysis. There, thesanction — revocation of a victualing license — was so unrelated to the violation — moving a structure without zoning board approval — as to be absurd. Id. In this case, Appellant was fined and its victualing license suspended because Appellant violated a term of its victualing license. The fine is the general sanction applicable to any ordinance violation. Newport, R.I., Code § 1.12.010 (2009). Here, unlike Primiano, the sanction naturally follows from the violation.
Even if Primiano could be read so broadly as to require a searching analysis of the policy behind the terms to victualing licenses, Appellant's argument must fail. Appellant argues thatPrimiano stands for the proposition that any terms attached to a victualing license must directly promote the public health. The reasoning in Primiano, however, concerned the fact that the policies addressed by victualing licenses were unrelated to the policies underlying the zoning ordinance. The zoning violation could not reasonably give rise to the victualing sanction. *Page 7 
Appellant strenuously argues that a limitation on the hours of operation has no relation to the public health, and as such cannot possibly constitute an actionable offense, let alone an offense warranting imposition of the maximum penalty. It is true that "public health concerns must support the regulation of liquor and victualing establishments." Amico's Inc. v. Mattos,789 A.2d 899, 905 (R.I. 2002). Limitation of the operating hours of a business, however, has been held to be a legitimate exercise of the state's police power to provide for the health, safety, and welfare of its citizens. Marc L. Carmichael, Annotation,Validity of Municipal Ordinance Regulating Time During WhichRestaurant Business May Be Conducted, 53 A.L.R. 3d 942 (1975). Concerns over noise and traffic — particularly in a mixed residential and commercial area as heavily populated as Thames Street — are sufficient to justify a limitation on the hours of operation as a health, safety, and general welfare concern.Id. The Court is unmoved by Appellant's argument that because operating after-hours is the "least problematic violation possible" as compared to, for example, overcrowding or breach of the peace, the sanction for operating after-hours was arbitrary. (Appellant's Memo. at 5.) The imposition of a fine for the violation of the statutory hours-of-operation provision is valid.
 2. The Maximum Fine
Appellant argues that the imposition of the maximum fine was an "arbitrary and capricious" exercise of municipal power. Section 42-35-15(g)(6). Although it is helpful that Appellant references a ground for which the Court may overturn the City's decision, Appellant's argument on this point is unavailing. "Use of the arbitrary and capricious standard means that reviewing courts will uphold administrative decisions . . . as long as the administrative interpreters have acted within their authority to make such decisions and their decisions were rational, logical, and supported by substantial evidence." Goncalves v. NMU PensionTrust, 818 A.2d 678, 682-683 (R.I. 2003) *Page 8 
(citing Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181,184 (1st Cir. 1998)). "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Section 42-35-15(g).
The City evaluated the evidence in light of Appellant's status as a repeat offender. Appellant admitted to three (3) after-hours violations within just four (4) months of receiving his victualing license. The City had the opportunity to observe Appellant's demeanor and that of the witnesses, Officer Sullivan and Officer Geoghegan. The City examined both officers' reports. The City was well within its authority to discredit Appellant's claim that he misunderstood what constituted "conducting business" for the purpose of the operating-hours restriction. Similarly, the City was in the best position to accept Officer Geoghegan's recollection of Appellant's disdainful attitude as credible. Accordingly, the Court finds that the City's decision to impose the maximum fine of $1,000.00 was supported by reliable, probative, and substantial evidence.
 B The Suspension
Appellant recognizes that there is no legal authority for the City to impose a suspension. Appellant does not argue, however, that such a sanction was in excess of the City's jurisdiction or otherwise inappropriate under the Administrative Procedures Act. Instead, Appellant argues, based on Primiano, that the offense committed cannot give rise to the penalty imposed. Appellant contends that the sanction is inappropriate because the purpose of victualing license restrictions — to protect the public health — is not served by the suspension for an operating-hours violation because that violation does not impact the public health. (Appellant's Memo. at 3-4.)
"We give weight and deference to a [] board's interpretation and application of [its] ordinance, provided its construction is not clearly erroneous or unauthorized." Cohen v. Duncan, *Page 9 970 A.2d 550, 562 (R.I. 2009). The Court applies the rules of statutory construction to the statutes and ordinances administered by the board, giving clear and unambiguous language in an ordinance its plain and ordinary meaning. Id.
Two sources of law empower municipalities to regulate victualing licenses. Chapter 24 of Title 5 of the Rhode Island General Laws is the legislative delegation, to municipalities, of the authority to license and regulate victualing houses. It is undisputed that the City has the authority to revoke a victualing license pursuant to § 5-24-2. This section declares that the licenses granted by towns shall continue unless revoked for cause. See Santosv. City Council of East Providence, 99 R.I. 439,208 A.2d 387 (1965). In Santos, our Supreme Court upheld a municipality's revocation of a victualing license pursuant to § 5-24-2 for unsanitary conditions in the restaurant.Id. at 441-42, 208 A.2d at 388. In El Nido v.Goldstein, our Supreme Court overturned a municipality's decision to revoke a victualing license, reasoning that because § 5-24-2
allows municipalities to revoke license for cause, the municipality cannot revoke the license without first finding such cause through appropriate procedures. 626 A.2d 239 (R.I. 1993). More recently, in Amico's, Inc. v. Matteos, our Supreme Court upheld a municipal ordinance making cigarette smoking inside restaurants a "cause" sufficient to revoke a victualing license pursuant to § 5-24-2. 789 A.2d 899, 904-06 (R.I. 2002). Our Supreme Court did not comment on the lack of municipal-level regulation authorizing revocation in any of these cases.
Rhode Island General Laws § 5-24-2 permits municipalities to revoke victualing licenses for cause, but it also fails to mention suspension. Authority to suspend licenses, which is essentially a temporary revocation, logically follows from the undisputed authority to revoke licenses. Deductive reasoning however is not a legitimate method of lawmaking, no matter how intuitive, particularly in the area of long-established property rights: *Page 10 
 Statutes which impinge on fundamental freedoms are strictly construed, and no law should be construed to deprive a person of his freedom unless that result is clearly compelled by the language used. . . . Laws which are punitive in nature, and which would deprive an individual of the freedom to exercise . . . his business or profession, should be construed against the denial of this freedom. 3 Sutherland Stat. Const. § 58:4 (6th ed. 2009).
Section 5-24-2 must be strictly construed given the statute's punitive impact on Appellant's "freedom to exercise . . . his business or profession." Sutherland § 58:4. Thus, the Court concludes that suspension is not an available sanction under § 5-24-2.
Unsatisfied with mere authority to revoke licenses, municipalities have exercised their power to regulate licenses by providing for various sanctions. In Providence, the general penalty provision for any Code Ordinance violation carries the potential of fine, imprisonment, restitution, or community service. Providence, R.I., Code § 1-10 (2008). The penalty provision specific to the violation of any licensing provision carries the potential of suspension or revocation of the license. Providence, R.I., Code § 14-1.
The violation of any Newport Code Ordinance, which governs here, carries the potential for the maximum fine allowable in the Newport Municipal Court, which is $1,000.00, and imprisonment. Newport, R.I., Code § 1.12.010 (2009). Notably absent from both Newport's general penalty provision and the general chapter on licensing is the penalty of suspension. Newport's Code of Ordinances does not provide for the suspension of a license generally (§ 1.12) or of a victualing license specifically (§ 5.72). Suspension is an authorized sanction to be used against, for example, those licensed to haul trash (§ 8.24.040), and to operate pedicabs (§ 5.97.260). Regarding victualing licenses, however, there is no mention of suspension. Thus, the Court concludes that suspension is not an available sanction under the Newport City Ordinances. *Page 11 
With neither statutory nor regulatory authority, the City imposed a suspension. Such ultra vires action was in excess of the City's jurisdiction. While affording great deference to agency findings of fact, the Court must also ensure, through de novo review of jurisdictional issue, that "administrative interpreters have acted within their authority." Goncalves, 818 A.2d at 682-683; (citing Doyle, 144 F.3d at 184). In Cadillac Lounge, our Supreme Court overturned the Providence Bureau of Licenses' decision to fine an entertainment establishment $2,500.00 for two ordinance violations where the governing statute permitted a maximum fine of $500.00 per violation. 913 A.2d at 1043. Our Supreme Court reasoned that the regulations limited the Bureau of Licenses' jurisdiction to the maximum penalty provided. Id. Although Appellant did admit to violation of the terms of his victualing license, the City exceeded its jurisdiction when it suspended Appellant's license because such a sanction is "unwarranted in law." Kulkin,626 F.2d at 184; accord Cadillac Lounge, 913 A.2d at 1043. The Court thus vacates the suspension.
 Conclusion
After review of the entire record, the Court finds that the City's decision to fine Appellant $1,000.00 was supported by reliable, probative, and substantial evidence and was not affected by error of law. However, the Court finds that the City's decision to suspend Appellant's victualing license was unwarranted in the law. Accordingly, the decision of the City is affirmed in part and reversed in part.
Counsel for the Appellant shall submit a proposed order consistent with this decision.