DECISION
Before this Court are two appeals. The most recent appeal is from a decision of the Rhode Island Personnel Appeals Board (the "Board"), finding it lacked jurisdiction to hear Keith Fransson's appeal because it did not receive the appeal within the thirty-day jurisdictional deadline. The earlier appeal at issue is by the State of Rhode Island Division of Personnel (the "Division") from a decision of the Board that ordered the Personnel Administrator to perform his statutory duties and responsibilities and allocate or reallocate, then properly classify Mr. Fransson's current position. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 I Facts Travel
The facts and travel relevant to this appeal were established by this Court when it initially addressed this matter in State of Rhode Island, Division of Personnel v. State of Rhode Island, *Page 2 Personnel Appeal Board Keith Fransson, No. PC 07-1269, 2008 WL 693610 (R.I. Super. Ct. Jan. 22, 2008). In summary thereof, Keith Fransson ("Fransson") is an employee in the Community Confinement Division of the Department of Corrections ("DOC"). In March 2005, he filed a classification questionnaire (or desk audit) seeking reclassification of his current position as a Correctional Officer (Pay Grade 21A).[1] Specifically, Fransson asserted that his job requires him to go into the community; monitor inmates in home confinement and not in a walled correctional facility; troubleshoot monitoring equipment; manage situations in which equipment has failed and inmates may need to be returned to jail; train other officers to perform his functions; facilitate the collection of urine samples; and work on call.[2] After conducting a January 11, 2006 field audit, the Office of Personnel Administration ("OPA"), through the conclusions of a Deputy Personnel Administrator, found that Fransson was properly classified as a Correctional Officer.[3] Pursuant to G.L. 1956 § 36-4-40, Fransson timely appealed the OPA decision to the Administrator of Adjudication (the "Administrator").
Catherine Warren, the Administrator, conducted a hearing on April 25, 2006. Sitting as the Hearing Officer, she entertained testimony from three individuals: Fransson; Richard Petronio ("Petronio"), an OPA representative; and Kenneth Rivard ("Rivard"), a representative from the Rhode Island Brotherhood of Correctional Officers, Fransson's union. At this hearing, *Page 3 
Fransson for the first time stated that he sought reclassification to the Community Correctional Specialist I (Pay Grade 24A) position.[4] He commented that this classification represents "the closest thing" to his current responsibilities.[5] (Hr'g Tr. 4: 19-20.)
During the hearing, Petronio discussed the considerations underlying the OPA decision. Before concluding that Fransson was properly classified as a Correctional Officer, the OPA had examined three other positions — Correctional Specialist I, Community Correctional Specialist I, and Correctional Investigator I — only to determine that each strayed too far from Fransson's activities.[6] Although the OPA drew these conclusions, Petronio testified that the Correctional Officer title also failed to encompass Fransson's functions. In fact, Petronio commented that "we really do not have a class that addresses his . . . title."Id. at 9, lines 23-24. Furthermore, Petronio stated that the OPA made a recommendation to the agency that it should revise the Correctional Officer classification to create a new class.Id. at 10: 1-3. This recommendation, however, was not included in the OPA decision. Id. at 11: 1-3. *Page 4 
Armed with this information, the Administrator rendered a decision on May 8, 2006, which affirmed the OPA decision.[7] She found that Fransson performed the duties about which he and Rivard testified, as well as those described in the OPA decision and Petronio's testimony. The Administrator also recognized that the OPA had considered various other positions in evaluating Fransson's classification request prior to rendering its own decision. As a result, she found that Fransson was "not substantially performing work out of class as a Community Correctional Specialist I, Correctional Investigator I, or Correctional Specialist I." (Administrator of Adjudication Dec. [hereinafter "Administrator Decision"] at 12 May 10, 2006.) Thus, the Administrator affirmed the OPA decision which denied Fransson's request to be reclassified as a Community Correctional Specialist I.
Aggrieved by that decision, Fransson appealed the Administrator's decision to the Personnel Appeal Board pursuant to G.L. 1956 § 36-4-41. On February 7, 2007, the Board affirmed the Administrator's decision. (Personnel Appeal Board Dec. [hereinafter "Board Decision"] at 5, ¶ 21 Feb. 7, 2007.) The Board specifically found that Fransson should not be reclassified as a Community Specialist I because he does not counsel, but instead monitors, individuals in home confinement. Id. at ¶ 16. In addition, the Board found that Fransson's primary job duties and responsibilities are not set forth in his current classification description.Id. at ¶ 20. As such, it ordered the Personnel Administrator "to appropriately allocate or reallocate Fransson's position and to classify his position in the classified services according to the actual duties and responsibilities of his position."Id. at ¶ 24. *Page 5 
The Division of Personnel, of which the Personnel Administrator is the head, [8] subsequently filed a complaint in the Superior Court pursuant to G.L. 1956 § 42-35-5, seeking judicial review of the Board's decision. The Division contended that the Board erred in considering issues that were not properly before it on appeal and exceeded its jurisdiction and statutory authority when crafting its remedy. It also asserted that the Board violated the Division's due process rights while undertaking the review of Fransson's case. Finally, the Division argued that a previous arbitration decision, relating to proceedings in which Fransson's union was a party, was dispositive, and thereby precluded any review of the instant matter.
Fransson challenged the Division's suit, contending that the Division lacked standing under the Administrative Procedures Act to bring its appeal. Fransson insisted that the Board properly considered the issues before it and awarded a remedy grounded in its statutory authority and jurisdiction. Finally, Fransson opposed the contention that the arbitrator's decision was dispositive, because different parties were involved in the proceedings and different rights were adjudicated. The Board did not submit any briefs defending its decision.
After reviewing the Division's appeal, this Court addressed two procedural issues. Noting that the "paramount issues in this case revolve around an interpretation of the Merit System statutes," the Court first held that the Personnel Administrator had standing to bring the appeal under the public interest exception to G.L. 1956 § 42-35-15. State of Rhode Island, Division ofPersonnel, 2008 WL 693610, at *6. The Court then focused its attention on the matter of jurisdiction; specifically, whether Fransson's appeal to the Board from the May 10, 2006 decision of the Administrator was timely. Concluding that the Board "lacked sufficient *Page 6 
support for exercising jurisdiction over this matter," the Court remanded the issue of jurisdiction to the Board.Id. at *10-11.
As a result of this Court's remand of the case to the Board, additional facts are now pertinent to the issues facing the Court. On April 22, 2008, the Board conducted a public hearing to determine whether Fransson's appeal from the Administrator's decision was timely. At the hearing, the Board entertained the testimony of Fransson and the Board's administrative assistant, Kimberly McNulty. At the hearing, the timeline of Fransson's appeal was established as follows: On May 10, 2006, the decision from the OPA was mailed to Fransson, and a copy was delivered to him at work. Fransson was aware that pursuant to G.L. 1956 § 36-4-41, he had thirty days in which to request an appeal from this decision. The parties agree that he had until Friday, June 9, 2006 to request an appeal to the Board in writing. Proceeding pro se, Fransson drafted his letter of appeal on Monday, June 5, dated it as such, and put the letter in a mailbox outside the Garden City Post Office that same day. (Jurisdiction Hr'g Tr. 8: 232-41 Apr. 22, 2008.) It is undisputed that the letter was postmarked in Providence on Tuesday, June 6, 2006. The Board's office is located in Providence. The Board stamped the letter as received one week later on Tuesday, June 13, 2006.
Ms. McNulty stated that at the time of the hearing, she checked the Board's mail two times daily. Id. at 30: 892. When she is out of the office, a system is in place so that someone else checks the Board's mail in her place. However, Ms. McNulty testified that the Board did not employ a secretary during the summer of 2006.Id. at 30: 906-08. Ms. McNulty, who was then employed by Attorney Michael McElroy who was Legal Counsel to the Board, was the only person opening the Board's mail that summer.Id. at 36: 1097-98. She testified that during the summer she stopped by the Board office to check the mail "sporadically."Id. at 31: 916. During *Page 7 
the week in question, Ms. McNulty went to the Board's office and opened the mail sometime on Monday, June 6, 2006.Id. at 35: 1053. She did not return until Tuesday, June 13, 2006. Id. at 35: 1060. Ms. McNulty agreed that the letter could have arrived on the afternoon of June 6, or at any time on June 7, 8, or 9, 2006 and no one would have been at the Board's office to receive the letter.Id. at 35: 1064-66.
After opening Fransson's appeal letter, Ms. McNulty stamped it "received June 13." Id. at 30: 899-903; 32: 956-59. She then drafted two letters related to this matter: one letter was addressed to Fransson and the other was addressed to Asbel T. Wall at the DOC. In both letters, Ms. McNulty indicated that the appeal was received on June 13, because that was the receipt date that she stamped on Fransson's letter when she opened it. Id. at 32: 949-59.
On remand, the Board concluded that Fransson's appeal was not timely and, therefore, it lacked jurisdiction to hear his appeal. In its decision, the Board stated that "it finds and concludes that [Fransson] has presented no probative evidence that the appeal letter was received by this Board by June 9, 2006." (Personnel Appeal Board Dec. on Remand [hereinafter "Remand Decision"] at 8 Oct. 2, 2008.) The Board noted that this Court's decision stated that "[a]bsent evidence that the Board received Fransson's appeal within the thirty-day time frame, it cannot exercise jurisdiction over this matter . . . Fransson's request to the Board, if received on June 13, 2006, would have been untimely filed." Id. at 8-9 (quoting State of Rhode Island,Division of Personnel, 2008 WL 693610, at *10 n. 26).
Before the Court at this juncture is Fransson's appeal of the Board's dismissal for lack of jurisdiction. Also outstanding and turning on this Court's decision regarding the Board's jurisdiction to hear Fransson's appeal, is the Division's appeal of the Board's February 7, 2007 decision. *Page 8 
 II Standard of Review
The Superior Court's review of a final administrative decision is governed by G.L. 1956 § 42-35-15(g) of the Administrative Procedures Act ("APA"). The relevant provision of the APA provides that:
 "The Court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary of capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Section 42-35-15(g).
When this Court reviews a decision of an administrative agency, it sits as an appellate court with a limited scope of review, and this Court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Ctr. ForBehavioral Health v. Barros, 710 A.2d 680, 684 (R.I. 1998). The Court must affirm an agency's decision on questions of fact unless such decisions are "totally devoid of competent evidentiary support in the record." Baker v. Dept. ofEmp. Training, 637 A.2d 360, 363 (R.I. 1994). Thus, "[t]he Superior Court is confined to a determination of whether there is any legally competent evidence to support the agency's decision."Envtl. Scientific Corp. v. Durfee,621 A.2d 200, 208 (R.I. 1993). Legally competent evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion. It means an amount more than a scintilla but less than a preponderance." *Page 9 Town of Burrillville v. Rhode Island State Labor RelationsBd., 921 A.2d 113, 118 (R.I. 2007). This Court's limited review is not merely a rubber stamp for agency action and when appropriate, the Court may fall back on the standards set forth in the APA and "`reverse, modify, or remand the agency's decision.'" JohnstonAmbulatory Surgical Assocs. v. Nolan,755 A.2d 799, 805 (R.I. 2000) (quoting Barrington Sch. Comm. v.Rhode Island State Labor Relations Bd.,608 A.2d 1126, 1138 (R.I. 1992)).
This Court is not bound by an administrative agency's determination on a question of law; the Court will review these questions de novo. Arnold v. Rhode Island Dep't ofLabor Training Bd. of Review, 822 A.2d 164, 167 (R.I. 2003). However, "[w]here the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction give by the agency charged with its enforcement is entitled to weight and deference, as long as that construction is not clearly erroneous or unauthorized." Gallison v. Bristol Sch. Comm.,493 A.2d 164, 166 (R.I. 1985). Ultimately, considerations of agency jurisdiction and statutory interpretation are questions of law for which the Court is responsible. Cityof East Providence v. Pub. Utils. Comm'n,566 A.2d 1305, 1307 (R.I. 1989).
 III Discussion A Jurisdiction
General Laws 1956 § 36-4-41, which governs Fransson's appeal of the Administrator's decision to the Board, provides that:
 "[a]ny person with provisional, probationary or permanent status who feels aggrieved by a decision of the administrator of adjudication may, within thirty (30) calendar days of the rendering of a decision request in writing for the personnel appeal board to *Page 10 review the decision or conduct a public hearing. Within thirty (3) calendar days of the receipt of the request, the personnel appeal board shall make a report of its findings and recommendations to the governor based upon the decisions of the administrator of adjudication or the testimony taken at a hearing." (Emphasis added.)
When this Court first questioned the timeliness of Fransson's appeal, it explained that the "statutory period for claiming an appeal is jurisdictional in nature." See State of RhodeIsland Div. of Pers., 2008 WL 693610, at *7-8 (citingWood v. Dir. of the Dep't of Envtl. Mgmt. v. Ford,525 A.2d 901, 903 (R.I. 1987)). A state employee forfeits "his right of appeal [to the Board] through lack of timely filing and . . . the board [has] no authority to consider [an untimely] appeal on its merits." Wood, 525 A.2d at 903.
The first issue the Court must address is what is required to perfect an appeal; specifically, whether § 36-4-41 requires that an appeal be "received" within the thirty-day timeframe and, if so, what constitutes "received." Here, neither the statute nor the Board's rules and regulations specify what is required to perfect an appeal under § 36-4-41. However, as our Supreme Court recognized inGallison v. Bristol School Committee, an agency's interpretation of its own jurisdictional statute "is entitled to weight and deference, as long as that construction is not clearly erroneous or unauthorized." 493 A.2d 164, 166 (R.I. 1985). Thus, the Board's consistent requirement that an appeal must be "received" within thirty days of the rendering of a decision by the administrator of adjudication, receives deference from this Court. (Remand Decision at 8, ¶ 54.)
The next question is what constitutes "received"? For example, is it sufficient that an appeal arrive in the Board's office, or does the appeal need a date stamp to be "received"? Although it is not clear from the Board's decision whether the arrival or the receipt stamp is critical, it appears that the Board considers an appeal received when it is stamped. Seeid. at 12-13, ¶ 71 *Page 11 
(stating that if "an appeal letter is received and filed within the 30-day period in the building in which the Board has its offices (even if it is received in the wrong office), this Board will consider that to be a timely appeal."); but seeid. at 13, ¶ 72 (suggesting that if Fransson had faxed a copy of his appeal in addition to mailing it, the date stamp on the fax would have been evidence of when his appeal entered the Board's office). Although this Court agrees that the Board's interpretation of § 36-4-41 is entitled to deference, and that requiring appeals to be receipt stamped within the thirty-day period is not clearly erroneous, this interpretation requires that the Board's office is adequately staffed to receive and date-stamp appeals on the day they enter the office. See Gallison, 493 A.2d at 166;see also Citizens Sav. Bank v. Bell,605 F. Supp. 1033, 1042 (D.R.I. 1985) (recognizing that although deference is due to an agency's interpretation of its governing statute, this deference must not rise to the level of "blind allegiance.").
The Court will now turn its attention to the timeliness of Fransson's appeal. In its decision on remand, the "only findings" the Board made about the appeal letter was that it was postmarked on June 6, 2006 and stamped received on June 13, 2006. (Remand Decision at 8, ¶ 53.) The Board concluded that Fransson "presented no probative evidence that the appeal letter was received by this Board by June 9, 2006," and explained that appellants have the burden of establishing jurisdiction.Id. at 8, ¶ 54. Furthermore, the Board assumed no fault stating that by relying on "the vagaries of the United States Postal Service, the internal mail distribution service of the State of Rhode Island, and the personnel staffing issues faced by the State of Rhode Island," Fransson bore the risk that his mailed appeal would not be timely received. Id. at 8, ¶ 55. *Page 12 
In its 2008 decision, this Court noted that a "June 13, 2006 date of receipt would place Fransson's appeal beyond the statutory time frame set forth in G.L. 1956 § 36-4-41" and went on to quote the case of Mauricio v. Zoning Board of Review,590 A.2d 879, 880 (R.I. 1991) for the proposition that "any risk of nondelivery must be borne by the party who seeks the [action]."See State of Rhode Island Div. of Pers.,2008 WL 693610, at *9 n. 23. The Board's decision also states that one who mails a letter bears the risk of late delivery. (Remand Decision at 11, ¶ 65.) However, when this Court previously addressed the timeliness of Fransson's appeal, it did not have the insight provided by Ms. McNulty's testimony. Although Fransson did assume the risk of nondelivery when he placed his appeal letter in the mail, he should not be expected to take responsibility for understaffing and the inability of the Board to open its mail in a timely manner. Here, it is not an issue of nondelivery or nonreceipt, but an issue of a dereliction on the part of the office responsible for monitoring appeals. Where the Board interprets its jurisdictional statute as requiring that appeals are received within thirty days, it must ensure that it has the ability to receive its own mail.
When assessing the Board's determination that Fransson's appeal was untimely, this Court's role is "to examine whether any competent evidence existed in the record to support an of the [Board's] findings." Rocha v. Rhode Island Pub. Utils. Comm'n, 694 A2.d 722, 726 (R.I. 1997). The Board's decision must be affirmed, "unless the [Board's] findings in support of its decision are completely bereft of any competent evidentiary support."Id.
Here, the Court finds that the evidence does not support the Board's conclusion that Fransson's appeal was not timely. In its decision, the Board unjustly holds its understaffing against Fransson. Where the letter was sent on a Monday, postmarked on a Tuesday, and due by Friday, during the summer months where inclement weather is rarely an issue, a reasonable *Page 13 
inference is that the letter entered the Board's office before the time expired on Friday, June 9, 2006. Furthermore, where no mail was "received" between Tuesday, June 6 and Tuesday, June 13, 2006 because the Board was not properly staffed, it is arbitrary and capricious for the Board to determine that Fransson's appeal was not timely.
Finally, it is particularly troubling to this Court that throughout the summer of 2006, when Ms. McNulty was checking the Board's mail only sporadically, the Board was incapable of receiving any appeal submitted through the mail on a timely basis. In its decision, the Board suggests ways in which Fransson could have preserved his rights, including hand delivering his appeal to another office in the building, or faxing his appeal in addition to sending it via the postal service because the fax machine automatically prints out a receipt date. (Remand Decision at 12-13, ¶¶ 70-72.) However, it does not appear that the Board informed Fransson that due to budget constraints it was not regularly checking its mail. Therefore, it is patently unfair to expect him to anticipate internal staffing issues and hand deliver or fax his appeal to the Board.
Therefore, because the Board's decision is not supported by the evidence before it and is arbitrary and capricious in light of the Board's inability to receive mail on a timely basis during the time in question, this Court reverses the Board's determination that Fransson's appeal was not timely. It follows that because the Board had jurisdiction to hear Fransson's appeal, the Court must now return to the issues raised by the Division in its appeal of the Board's February 7, 2007 decision.
 C Underlying Appeal
On appeal, the Division puts forth four arguments in support of its position that the order of the Board compelling the Personnel Administrator to allocate or reallocate Fransson's position *Page 14 
should be vacated. The Division complains that the order is outside the scope of the issues articulated by Fransson in his appeal and exceeds the Board's authority. The Division also contends that the order should be vacated because its Due Process rights were violated and it is in direct conflict with an arbitrator's decision. Fransson objects to the Division's appeal of the Board's decision. The Board has not argued in support of its decision.
In its decision, the Board did "not reverse the decision of the Administrator of Adjudication" but ordered the Personnel Administrator pursuant to G.L. 1956 §§ 36-4-9;11 "to appropriately allocate or reallocate Mr. Fransson's position and to classify his position in the classified service according to the actual duties and responsibilities of his position." (Board Decision at 6, ¶ 24.) The Board went on to state that the "classification shall designate an appropriate title for his position and shall indicate the education, experience, capacity, knowledge, skill and other qualifications to be required of a person appointed to the position." Id. By not reversing the Administrator's decision, the Board upheld the original OPA determination that Fransson was properly classified as a Corrections Officer.
The first argument put forward by the Division is that the Board improperly considered issues that exceeded the scope of Fransson's appeal and were not properly before it. Specifically, the Division contends that the issue of reclassification was not raised below and the Board's decision should have addressed only the issue of whether Fransson was properly classified as a Corrections Officer. See Administrator Decision at 10 (noting that although "OPA recommended that DOC seek a new job classification for [Fransson]" the Administrator "does not have any authority to create a new job specification."). Furthermore, during the hearings before the Administrator, Petronio explained that when the OPA addressed Fransson's classification, it made a recommendation to the agency that Fransson's position be reclassified. *Page 15 
(Hr'g Tr. 10: 1-3.) Therefore, because reclassification was discussed in each preceding review, the Court is not convinced that the Board considered issues not previously raised in the proceedings. Instead, at issue is whether the Board exceeded its authority when it demanded reclassification.
The Division contends that the Board exceeded its authority when it ordered the Personnel Administrator to allocate or reallocate Fransson's position. Pursuant to G.L. 1956 § 36-3-5, the Personnel Administrator's statutory duties include "direct[ing], supervis[ing], develop[ing], and authorize[ing] all personnel related administrative and technical activities including personnel administration and personnel management" and "supervis[ing] the operation of the classification plan and [recommending] to the director amendments and additions thereto." Additionally, the Personnel Administrator shall "classify all of the positions in the classified service according to the duties and responsibilities of each position," and the classification plan shall be arranged so that "all positions that are substantially similar with respect to authority, responsibility, and character of work are included within the same class and that the same pay schedules can be made to apply with equity under like working conditions." Section 36-4-9. When the governor adopts the classification plan, the Personnel Administrator:
 "shall allocate every position in the classified service to one of the classes established by the plan. Thereafter, whenever new positions are authorized and created, whenever the duties and responsibilities of existing positions change, or whenever the classification plan is amended, the personnel administrator shall allocate or reallocate the affected positions and shall determine the status of employees affected by the action in accordance with the personnel rules." Section 36-4-11.
When the classification plan does not adequately cover all positions in the classified service, there is a specific statutory method for changing the classification system. Pursuant to § 36-4-10 *Page 16 
 "[a]dditional classes may be established and existing classes may be divided, combined, altered, or abolished upon recommendation of the personnel administrator, recommendation by the director after public hearing, and approval by the governor. This action may be initiated either by the personnel administrator, the director, or on request of an appointing authority. Appointing authorities intending to establish new positions shall so notify the personnel administrator, and except as otherwise provided in this chapter, no person shall be appointed to or employed for a new position until it has been properly classified as herein provided and an appropriate list established therefor." (Emphasis added.)
Here, the Board found that Fransson was not performing the duties within his classification as a Corrections Officer. (Board Decision at 5, ¶ 20.) Pursuant to the Merit System Act discussed above, where an employee is not performing duties within his classification, the Personnel Administrator has a statutory obligation to allocate or reallocate the affected position. However, the issue is whether the Board has the authority to order that the Personnel Administrator exercise this authority. If the Board did not have such authority, then its decision is "[i]n excess of the statutory authority of the agency," and this Court may reverse or modify the decision. Section 42-35-15(g)(2).
The Board is a creature of statute created under § 36-3-6, and is empowered to hear appeals pursuant to § 36-3-10, including those "[b]y any person with provisional, probationary, or permanent status in a position in the classified service aggrieved by an action of the administrator of adjudication for the department of administration on matters of personnel administration." Section 36-3-10(a)(1). Upon hearing an appeal, the Board must "make a report of its findings and recommendations to the governor based upon the decisions of the administrator of adjudication or the testimony taken at a hearing." Section 36-4-41.
The Rhode Island Supreme Court addressed the limited nature of the Board's authority in Perrotti v. Solomon,657 A.2d 1045 (R.I. 1995). There, a former state employee argued that *Page 17 
"only the [Board] ha[d] the authority to adjudicate the merits of a suspension or termination of a state employee."Id. at 1047. Construing G.L. 1956 (1990 Reenactment) § 36-8-3, the Court reasoned that the General Assembly endowed the retirement board with broad powers to administer and operate, establish rules and regulations for the administration and transaction of, and "perform other such functions as are required" for administration of the retirement system. Id. at 1048. The Court held that although the Board "ha[d] statutory jurisdiction to hear appeals brought by state employees from adverse employment actions pursuant to § 36-3-10, it [did] not possess the authority to determine an employee's eligibility for state pension benefits." Id. This power was specifically delegated to the retirement board.Id. The Supreme Court concluded its discussion by pointing out the fact that the "General Assembly ha[d] not given the [Board] any jurisdiction over the determination of state pension eligibility."Id.
The Superior Court has also addressed the limited nature of the Board's authority on matters substantially similar to those at issue today. Lopez v. Personnel Appeal Bd., Sheehan, J., addressed the issue of whether the "efficacy of the job classification scheme, the job descriptions that are part of that scheme" and the Board's reliance on an existing job description were erroneous. No. CIV.A. 99-41551, 2002 WL 393847, at *3 (R.I. Super. Ct. Mar. 4, 2002). Examining the interplay between the duties of the Personnel Administrator and the Board's power to hear appeals, the court explained that the "Personnel Administrator, not the Board, has the authority to create the classification plan, allocate the positions to the classes within the plan, and make changes to the plan."Id.[9] *Page 18 
When this appeal was before her, the Administrator followed the guidance provided by the Lopez Court and noted that although § 36-4-9 gives the Personnel Administrator authority to create a new job classification, she did not share this authority with the Personnel Administrator and her review was "limited to the determination of whether [Fransson] [was] substantially performing work out of class." (Administrator Decision at 10.) The Board, however, chose to compel the Personnel Administrator to exercise his authority in its decision.
Although our Supreme Court specifically addressed the limited power of the Board with respect to determining state pension eligibility in Perrotti, the Court's discussion of the Board's limited powers is informative. Despite having the power to hear appeals by aggrieved employees, the Court held that the Board was limited in the remedies it could impose because it could not determine an aggrieved employee's eligibility for pension benefits; that power was left to the retirement board. SeePerrotti, 657 A.2d at 1048; see also Lopez,2002 WL 393847, at *3 (like the retirement board's exclusive authority over matters involving pension eligibility, only the Personnel Administrator has the statutory authority to "recraft the classification syste[m]"). This is analogous to the Board's limited power in the instant matter to hear appeals pursuant to classification systems already established by the Personnel Administrator. Accordingly, the Board must rely on the classifications in effect and only the Personnel Administrator can change and update the classification system pursuant to § 36-4-10. See id.
Additionally, the Supreme Court's determination that the Board could not address matters of pension eligibility because the General Assembly had not conferred jurisdiction in that area to *Page 19 
the Board is binding. See Perrotti, 657 A.2d at 1048. The Perrotti Court recognized that the Board's powers are limited to those specifically bestowed on it by the General Assembly. Id. Here, the General Assembly did not give the Board power to either create a new job classification or to demand that the Personnel Administrator do so. Section 36-4-10 gives only "the personnel administrator, the director, or . . . an appointing authority" the power to initiate a change to the classification system. Therefore, when the Board "Order[ed] the Personnel Administrator . . . to appropriately allocate or reallocate Mr. Fransson's position and to classify his position in the classified service," the Board not only exceeded its statutory authority, it also ignored a specific statutory procedure for reclassification. (Board Decision at 6, ¶ 24.)
Because the Board's decision was ultra vires and exceeded the scope of the Board's statutory authority, the portion of the decision that orders the Personnel Administrator to exercise his statutory duties and allocate or reallocate Fransson's position is vacated. Therefore, because the Board declined to overturn the Administrator of Adjudication's decision upholding OPA's determination that Fransson was properly classified as a Corrections Officer, the decision of the Administrator of Adjudication is affirmed. Although the Court agrees that job responsibilities outlined by Fransson's description of his work as a Home Confinement Officer do not align with the duties and responsibilities of a Corrections Officer, there are proper statutory avenues for changing the classification system and creating a new position that more adequately incorporates Fransson's responsibilities.
 IV Conclusion
The Court reverses the Board's decision that it lacked jurisdiction to hear Fransson's appeal because it finds that the Board's decision was arbitrary and capricious. The portion of the *Page 20 
Board's decision ordering the Personnel Administrator to allocate or reallocate Fransson's position is vacated because it exceeded the Board's statutory authority. Because the decision exceeded the Board's authority, the Court will not address the Division's claims that the appeal process violated the Division's Due Process and that the Board was bound by a prior arbitration decision. Counsel shall submit the appropriate Judgment and Order for entry.
[1] The classification questionnaire was filed with the Department of Corrections Personnel Office in August 2005, after Fransson's immediate supervisor and the department head reviewed his response to the questions set forth therein. Neither Fransson's immediate supervisor nor the department head noted any inaccuracies in Fransson's description of his current responsibilities and duties. Box 26, however, the space permitting an employee to identify the classification title which he or she feels is consistent with the duties and responsibilities currently performed, was left blank by Fransson.
[2] See Classification Questionnaire, Answer 17B; Fransson Hr'g Tr. 24: 5-22, Apr. 25, 2006; 26 lines 6-14; 27: 4-22.
[3] In light of the "basic allocation factors of character of work, authority and responsibility," Deputy Personnel Administrator Melanie Marcaccio determined that "the subject position is best classified as Correctional Officer." See OPA Decision (Mar. 21, 2006).
[4] See Hr'g Tr. 4: 19-20. Fransson appears to have directed the Administrator's attention to the written description of the Community Correctional Specialist I position.
[5] Rivard also testified that he believed the Community Correctional Specialist I position came closest to mirroring Fransson's duties. He stated that the traditional responsibilities associated with Correctional Officers at the Adult Correctional Institution (ACI) and those associated with the Correctional Officers at the Home Confinement Unit were "totally different." (Hr'g Tr. 13-14.)
[6] The OPA found that the Correctional Specialist I position was inapplicable, as it pertained to the care, custody, and control of inmates at a boot camp facility. See Hr'g Tr. 7: 14-19. The Community Correctional Specialist I job specification also failed to fit Fransson's duties because it involved providing counseling, advice, and assistance to offenders. Seeid. at 5-15. Similarly, the Correctional Investigator I description did not resemble Fransson's responsibilities; rather, that position entailed patrolling and inspecting buildings, grounds, work sites, and other areas where ACI inmates are present.See id. at 8: 16-20.
[7] The certification indicates that the decision was mailed on May 10, 2006 to Fransson's home, and delivered to his place of employment. In addition, the certification identifies a number of persons to whom the decision was hand delivered: George Truman Jr., Associate Director of Human Resources; Deborah Rotundo, Human Resources Analyst I; and Richard Petronio and Melanie Marcaccio, both at the Personnel Office in the Department of Administration.
[8] See G.L. 1956 § 36-3-4 (establishing the Division of Personnel Administration within the Department of Administration and naming the Personnel Administrator the head of that division).
[9] When hearing an appeal, the Board
 "does not have the power or authority to recraft the classification system because an employee brings before it a claim that the system is no longer accurate. Only the Personnel Administrator may mach changes to update the system. See G.L. 1956 § 36-4-10. Therefore, the Board must rely on the job classification in effect at the time of the desk audit in its review of whether an employee is working outside his or her class." Id. *Page 1